## THE NORTHERN COLORADO IRRIGATION COMPANY v. RICHARDS.

1. WATER RIGHTS—ROYALTY.

An exaction by a ditch company of a royalty or bonus as a condition
   precedent to furnishing water to consumers of water under its ditch
   is unlawful.

2. SAME—STATUTORY CONSTRUCTION.

One who has procured water from a ditch company, paid for and used
   it for irrigation during one season, is entitled to invoke the provisions of the statute (Gen. Stats., sec. 1740) in so far as to require the
   company to accord him a preference over new applicants to the
   same amount of water for subsequent years.

3. VARIANCE—PRACTICE.

It is too late to object for the first time on appeal that there was a variance between the allegations and proof.

4. IMMATERIAL ERROR.

When it is apparent from the result that a party has not been prejudiced by a failure to instruct as to the correct measure of damages,
   such omission does not constitute reversible error.

5. MEASURE OF DAMAGES.

When, in an action against a ditch company for damages for failure to
   furnish water for irrigation, the rental value of the land is adopted
   as a basis for estimating damages, the jury should be instructed to
   deduct from the rental value the necessary outlay which the plaintiff would have been required to make in the cultivation of the
   lands.

6. SAME.

The rental value of the land is not to be taken as the measure of damages for a failure to furnish water for irrigation, except when the
   consequent loss of crops was entire.

7. SAME.

While the loss of trees, seed and labor, occasioned by a failure to fur-
    nish water for irrigation, may constitute a proper element of dam-
    age in an action for such failure, compensation for permanent
    improvements or for depreciation in the value of live stock and
    farm implements cannot be recovered.

*Appeal from the District Court of Arapahoe County.*

THIS is an action brought by David M. Richards against
The Northern Colorado Irrigation Company, in the district
court of Arapahoe county, to recover damages for its refusal
to furnish water for irrigation purposes.   The complaint con-
tains two distinct causes of action.   In the first it is in sub-
stance averred that in the year 1884 defendant, a corporation
duly organized and existing under the laws of the state of
Colorado, was the owner of and engaged in operating an
irrigating canal for the purpose of irrigating lands lying
under it; that plaintiff was the owner of 160 acres of land
situate in Arapahoe county, lying under and capable of irri-
gation by said canal; that he had no other source from which
to obtain water for irrigation, except therefrom.   In the
month of March of that year, there was sufficient water flow-
ing in said canal undisposed of for the irrigation of his land;
that he then and there applied to defendant to deliver and
furnish him water from said canal for the irrigation of his
land, and then and there offered and was willing to pay a
reasonable water rate or compensation therefor; that defend-
ant refused to furnish or deliver water for such irrigation
unless plaintiff would then and there pay, as a condition
precedent, a certain bonus or royalty of $12.00 per acre;
that this demand and offer were also made at the beginning
of the irrigation season in 1885–6–7, and on each occasion
defendant refused to supply water for the irrigation of plain-
tiff's land unless he would pay the said royalty; during these
years no rate to be charged by the company had been fixed
by the county commissioners; that by the refusal to supply
him with water he had been deprived of great gains, etc.

In the second cause of action it is in substance averred

that in July, 1887, on application, the county commissioners of Arapahoe county made an order fixing the rate to be charged for supplying water for the irrigation of lands in said county at $1.75 per acre; that during the irrigation season of 1888 plaintiff procured water from defendant for the irrigation of his land, and that on April 12, 1889, not having ceased to use water from said canal with intent to procure it elsewhere, he again applied for water for the irrigation of the same land, and offered and was willing to pay $1.75 per acre, the rate fixed by the board of county commissioners, and the defendant refused and neglected, during the whole of that season, to supply him with any water whatever, and believing that defendant would, as in duty bound, deliver water to him as in the preceding year, he purchased divers implements and animals for the cultivation of said land, and also purchased and planted thereon a large number of trees and shrubs, and expended large sums of money in preparing the land for cultivation; planted large quantities of grains, grasses, etc.; that by reason of the wrongful refusal of the defendant to supply him with water, and his inability to obtain it from any other source, the crops so planted perished, and the money expended was lost.

The answer puts in issue all the material averments of the complaint. The cause was tried to a jury, verdict in favor of plaintiff, assessing his damages upon the first cause of action in the sum of $2,200, and at $2,100 on the second. Judgment was entered on the verdict for $4,300 and costs. From this judgment the defendant prosecutes this appeal.

Mr. HUGH BUTLER, for appellant.

Messrs. WELLS, McNEAL & TAYLOR and Mr. J. WARNER MILLS, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

The assignments of error discussed and relied on for a reversal of the judgment present the following objections:

First, there was no sufficient demand for water, or tender made therefor, to support the first cause of action; second, that the evidence introduced under the second cause of action was variant from its averments and failed to show such contractual relations between the parties as would entitle plaintiff, as a prior and continuing user, to water in the year 1889, and that the court erred in instructing the jury that the plaintiff was entitled to recover damages for the depreciation in value of the improvements made and the stock purchased; third, that the damages assessed upon both causes of action are excessive.

It is undisputed that plaintiff's land lay under defendant's ditch, and that it constituted the only source from which water necessary for its tillage could be obtained; and that plaintiff, in the month of March, 1884, applied to its manager for water for its irrigation; and we think it sufficiently appears that the company could have supplied the water had it been so disposed. But it is contended that the plaintiff's demand was not sufficiently positive, nor his offer of compensation sufficiently definite and formal to apprise the company's manager of his desire for water or his willingness to pay a reasonable price for it. In other words, that the application was not sufficient to constitute a legal demand, and the defendant was justified in disregarding it. The plaintiff's testimony upon this branch of the case is as follows:

" I undertook to improve the farm in 1884. I took a friend of mine who was gardening west of there to examine the land, and made a provisional contract with him to improve the land, conditionally upon my getting water for it. * * * Previous to closing the contract with him I went to Mr. Gilmore (the company's agent and manager) to see if I could secure water for the land. * * * Saw him at what is known as the Barclay block, where the Ditch Company's office is still. I told him I was making an arrangement to cultivate the land and I came to see if I could get water to irrigate it with. He immediately proceeded to tell me the conditions on which

I could get water. There was a long conversation ensued, and he took out a contract which he told me I would have to sign in order to get water. I asked him to read it to me, and he did so. I hesitated about it somewhat. * * * Mr. Gilmore informed me that the blank space for the number of dollars would be filled with twelve dollars ($12.) for the privilege, as he termed it, of getting water. The annual rental would be one dollar and fifty cents ($1.50) per acre. * * * I said I was willing to pay the current charge for the use of water, and that I regarded such charge reasonable. I meant by the current charge $1.50 per acre. There was a good deal more talk, but I don't remember any particular details, except on the question of payment, which was frequently referred to. * * * I offered to pay the annual rental for water, $1.50 per acre. He said he could not accept it without the previous conditions of the royalty. * * * After a long discussion I went out, debating with myself whether I could possibly make the contract and hope to own the land afterwards. I told Mr. Gilmore I would have to think about it; that I would not undertake to decide that day. * * * A few days afterwards I met him on Sixteenth street near Lawrence, and he asked me what I concluded about it. I said I had concluded on taking the chances of a fight rather than submit to the conditions. This was near Daniels & Fisher's store. I saw him afterwards a number of times in his office with the same result, that is, the same conditions were always imposed."

He also testified that in the month of March in the ensuing years, 1885–6–7, he made like demands, all of which were refused. On cross-examination the following question was put to him:

"Q. Did you say you would pay any other price except $1.50 an acre ? A. I don't think I did ; I was not offered the privilege of paying any other price.

"Q. The only offer you made was that you would pay $1.50 an acre for the water? A. Yes, sir."

Mr. Gilmore, the manager of the company, testified, in

regard to this interview, that the plaintiff came into his office and entered into a discussion about water right contracts; that he read him the contract and they discussed the conditions quite a while; that the plaintiff made no demand for water and did not mention any sum of money that he was willing to pay.   On cross-examination he said :

" At that time if he had said, I want water for irrigating my land this season, and I will pay $1.50 for it, he would have had it; he did not ask for it that way; about thirty other people got it that way that same season."

The jury evidently accepted the plaintiff's version of the interview, and found that he was able and willing, and did offer to pay $1.50 per acre for the water, and that the company exacted the payment of a royalty as a condition precedent to furnishing water at that price.   This being so, it is manifest that it would have been an idle ceremony for plaintiff to have actually tendered that amount, or any other specific sum, without obligating himself to pay the specified royalty.   That the exaction by the company of a royalty or bonus as a condition precedent to furnishing water to consumers under its ditch is unlawful, is too well settled to admit of discussion.   *Wheeler v. Northern Colo. I. Co.*, 10 Colo. 582.

If, therefore, as contended by counsel for defendant, the $1.50 specified in the contract did not fully cover the carriage fee, and that part of a sufficient charge for this service was included in the amount thus illegally exacted, certainly fair dealing would require that the company should specify what part of such fee was included, and designate to applicants the sum it regarded as a reasonable rate for carriage. Its duty to perform the service upon payment or tender of a reasonable compensation is imposed by law, and it cannot be permitted to evade the performance of this duty merely because the price offered by plaintiff was inadequate, without stating what it regarded as a reasonable sum, and by placing its refusal upon another and different ground.

We think, in view of the situation of the parties, that the evidence shows a sufficient demand on the part of plaintiff

for the water, and an unwarranted refusal on the part of defendant to supply it during the years 1884 to 1887 inclusive.

In support of the second contention, counsel for defendant insist that the water supplied in 1888 was furnished under a special contract, and the effect of the acceptance by the company of the plaintiff's tender was limited and defined by the receipt it gave for the money paid; that the demand and acceptance was under the act of 1887, and gave him a right to the surplus water which the company had, or could obtain with the exercise of reasonable diligence, during the year 1888, and did not establish such contractual relations between the parties as entitled plaintiff to the right to continue to purchase water thereafter, by virtue of the provisions of section 1740, General Statutes 1883. We think this claim is untenable. The statute of 1887 is entitled "An Act to Define, Prohibit, Punish and Restrain Extortion and Other Abuses in the Management of Ditches, Canals and Reservoirs." It is purely penal and makes it an offense punishable by fine and imprisonment for any person or corporation to demand or accept any royalty, bonus or premium as a condition precedent to the right to procure water. It declares such exactions illegal, but in no way impairs the rights of consumers as they existed prior, or that accrue subsequent, thereto, under section 1740, Gen. Stats. 1883, which provides:

"Any person or persons, acting jointly or severally, who shall have purchased and used water for irrigation for lands occupied by him, her or them, from any ditch or reservoir, and shall not have ceased to do so for the purpose or with intent to procure water from some other source of supply, shall have a right to continue to purchase water to the same amount for his, her or their lands, on paying or tendering the price thereof fixed by the county commissioners;" etc.

Plaintiff applied for and procured water for the irrigation of 120 acres of his land during the season of 1888, paying therefor the rate fixed by the county commissioners; broke

and improved his land and used the water on it for that season.  We think this gave him a status which enabled him to invoke the foregoing provisions of the statute in so far at least as to require the company to accord to him a preference to the same amount of water for subsequent years over new applicants.

But it is objected that it is not alleged in the statement of this cause of action that the conditions in 1889 were the same as in 1888, or that the company had a surplus of water over and above what was required to supply those having prior rights, and that the evidence introduced tending to show that there was such surplus was a departure from the pleading. Conceding that such an averment was necessary, and the evidence introduced by plaintiff to the effect that defendant had a surplus of water in 1889, and supplied several persons who had not taken water from the ditch until that year, was improperly admitted under the pleading, no objection was made at the time it was offered on the ground that it constituted a variance, and it is too late to urge it for the first time in this court.   The evidence before the jury was sufficient to justify its finding that the refusal of the company to furnish the water in 1889 was wrongful and constituted a breach of duty for which it was liable.

Counsel for defendant contends that the damages assessed upon the first cause of action are excessive, and that the measure adopted for their ascertainment was erroneous, being based upon the theory of a cash rental equal to one third of the estimated product of the land; and, furthermore, that the jury allowed the full amount of such rental without deducting the cost and expense plaintiff would have been put to in making the necessary improvements for the cultivation of the land.   Although the witnesses testified to the rental value of the land during the years 1884 to 1887 inclusive, none of them, so far as we can ascertain in his testimony in chief, based his conclusion upon such an estimate ; and while it is true that the court omitted to instruct the jury to deduct from the rental value the outlay plaintiff would have been

required to make, which it properly should have done, it nevertheless appears from the result arrived at that the plaintiff was not prejudiced by the failure to give such direction. It appears from the evidence that the plaintiff had entered into a contract with one Milner, conditioned upon his obtaining water, whereby Milner agreed to pay a cash rental of $5.00 per acre for the year 1884, pay for the water and break the land; plaintiff to furnish the necessary material for the erection of certain buildings and fences, and to make other improvements. It was further shown that the breaking of the land was worth $3.00 per acre. Plaintiff testified that the amount of outlay that he would have been required to make would have amounted to the sum of $650. This statement was uncontradicted, and it therefore became a matter simply of computation to determine the amount that he was entitled to recover for that season. The benefit that he would have received in the breaking of his land, and the cash consideration would aggregate the sum of $1,280. The amount of expenditure, $650, deducted therefrom would leave a balance of $630, as the actual loss he sustained by reason of the failure of defendant to furnish the water.

The same conditions existed during the subsequent years, except the contract of rental to Milner, and although this element of certainty as to the rental value of the premises was lacking, there is ample testimony to the effect that the land would have brought a larger rental for those years, so that it is clear that the damages assessed upon the first cause of action do not exceed the amount plaintiff was entitled to under the evidence, after deducting the necessary outlay and expenditure; hence the omission to instruct the jury upon this point was without prejudice to defendant's rights, and does not constitute reversible error.

The errors assigned upon the finding of the jury on the second cause of action present more serious objections, and such, we think, as necessitate a reversal of so much of the judgment as is based upon that finding. While different methods may be adopted for the ascertainment of damages

recoverable in this character of action, and it is sometimes difficult for the court to determine what the true measure is until the evidence is received, yet when all the evidence is in it is the duty of the court to instruct the jury what the proper measure is under the circumstances disclosed thereby. Plaintiff was permitted, over objection, to testify that he had in the preparation for the cultivation of his land during the year 1889, purchased horses, farming implements, etc.; and also that for the same purpose he had made other expenditures in the way of permanent improvements; that previous to the demand for water made on April 12, 1889, he had plowed and planted about forty acres of land.

It also appears that after that date he broke and seeded several acres more, making in the aggregate about eighty acres that he had so prepared and planted, consisting of ten acres of barley, twenty acres of oats, forty-five acres of wheat, about five acres of potatoes and other garden truck. He also testified that he raised partial crops upon this land, notwithstanding the failure of defendant to furnish him water; and gave as his opinion that had the water been furnished he would have realized, from the increase in the yield of such crops, about $1,500, without deducting the cost of raising, harvesting and marketing the same.

He was permitted to testify to the different amounts he had paid for horses and implements; and that he bought a large amount of lumber, which was used in making additions to his house, stable and corral, at a cost of from $800 to $1,000. He also stated that he lost in fruit and native trees about $600. Testimony was also introduced in regard to the rental value of the land for that year. With this testimony before them the jury were instructed that the plaintiff was entitled to recover the value of the trees and seeds lost by reason of defendant's failure to supply water, together with the expense that was incurred in plowing and planting prior to the time at which the water was demanded; and for all lands not seeded at that time, he was entitled to recover the reasonable rental value; and that if—

"By reason of such refusal the improvements and prepa-
ration made by the plaintiff as above supposed became, in
part, useless to the plaintiff, or were of less value and use to
him, then the fact of such improvements and preparations is
to be considered and taken into account in estimating the
damages to be allowed to the plaintiff for such wrongful re-
fusal of defendant.    The plaintiff is to be allowed the reason-
able rental value of his land in its improved condition (if the
improvements were made under the circumstances above
supposed), if he was deprived of the use thereof by the
wrongful conduct of the defendant."

We think that these instructions were incorrect when ap-
plied to the evidence in the case.    While the loss of the trees,
seeds and labor would constitute a proper element of damage,
under the theory that the plaintiff was justified in making
such expenditure, relying upon his right to the water for
that season, yet the instruction, in so far as it allowed com-
pensation for the permanent improvements as well, was
clearly erroneous; and also in allowing damages for depreci-
ation in the stock and farming implements, especially since
it appeared from plaintiff's testimony that such depreciation
was occasioned by their use in preparing and planting the
ground from which a partial crop was realized; and in al-
lowing rental value of the land not seeded at the time of the
demand, for two reasons: First, because such rental was not
limited to the remainder of the 120 acres for which the com-
pany was obligated to furnish water for that year; and,
second, because it was in evidence and undisputed that a
portion so included outside of the specified 40 acres produced
a partial crop.    It certainly will not be contended that rental
value is a proper measure of damages unless the owner is
deprived of the entire use of his land.    And when, as in
this case, the owner's injury arises not from being entirely
deprived of the use of the land, but only from the impairment
of its use by the wrongful act of defendant, the allowance of
rental value, without deducting the benefits derived from
such use as was made of it, would be manifestly unjust.

We think that upon the facts as they appear in evidence the proper criterion by which to judge of plaintiff's damage under the second cause of action is the difference between the amount realized from the crops the land did produce, and the amount that would have been realized therefrom had the water been furnished, less the added cost of raising, harvesting and marketing the product; the loss of trees and the loss of the use of that portion of the 120 acres which plaintiff was prevented from cultivating. Measured by this test, as well as by the rule adopted by the court below, the amount of damages assessed under the second cause of action is excessive. For this reason the judgment will be reversed and the cause remanded, with directions to enter judgment upon the verdict on the first, and to grant a new trial as to the second, cause of action.

*Reversed and remanded.*