## No. 17,568.

WANAMAKER DITCH COMPANY *v.* FRANK S. CRANE, JR.,
ET AL.
(288 P. [2d] 339)

Decided October 3, 1955.

Mr. E. B. Evans, for plaintiff in error.

Mr. Colin James, for defendants in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the Court.

Defendants in error, as plaintiffs, commenced action entitling their complaint as one "For Declaratory Judgment and Injunction," alleging therein that they are the owners of certain described lands in Jefferson County together with sixty inches of water from the Wanamaker Ditch out of its priority of June 1, 1860; that the defendant corporation is engaged in supplying water to plaintiffs and others for farm purposes; that said ditch is entitled to two decrees out of Clear Creek, priority No. 6 as of June 1, 1860, for eight cubic second feet, and priority No. 52 as of November 5, 1868, for thirteen cubic second feet; that in times of shortage of water defendant insists upon requiring plaintiffs to prorate their water with that of other users from said ditch in disregard of plaintiffs' rights, and sought judgment declaring plaintiffs' right to be as alleged and that by mandatory order defendant be required to continuously deliver at plaintiffs' headgate from its ditch, sixty inches of water from the priority of June 1, 1860.

Following hearing the trial court entered extensive findings of fact and conclusions of law, the portion per-

tinent here being summarized as follows: That on July 8, 1910, the defendant corporation was organized following acceptance of a proposition by one Thomas Williams and Elizabeth Wanamaker, then the joint owners of said ditch, to convey all of their interests therein to said corporation in consideration of the issuance to each of them of 600 shares of the capital stock of the corporation; that the stock was issued to said Williams and Elizabeth Wanamaker; that Williams conveyed his interest in the ditch to the corporation, but that no such conveyance was made by Wanamaker; that on December 22, 1910, Wanamaker conveyed to her daughter, Blanche Webber, the lands now claimed by plaintiffs, together with "60 inches of water out of the Wanamaker Ditch of the priority of June 1, 1860," that on January 5, 1923, Blanche Webber conveyed to Lyle DeWitt Webber an undivided one-half interest in and to said lands and in and to "60 inches of water out of the Wanamaker Ditch priority of June 1, 1860;" that on February 20, 1926, Blanche Webber and others, describing themselves as sole heirs at law of Elizabeth Wanamaker, deceased, apparently in an effort to carry out the original agreement of Elizabeth Wanamaker to convey all of her interest in the ditch to the corporation when organized in 1910, executed their joint deed conveying to the defendant corporation, in consideration "of the issuance heretofore of 600 shares of capital stock of said company to Elizabeth A. Wanamaker during her lifetime" all of their respective rights, title and interest as heirs-at-law of said Elizabeth Wanamaker, being an undivided one-half interest, in the Wanamaker Ditch, its headgates, flumes, franchises, rights of way and water appropriated thereby, especially priorities No. 6 and 52 out of Clear Creek; that on September 30, 1939, Blanche Webber and Lyle DeWitt Webber conveyed to plaintiffs the lands now claimed by them, including "60 inches of water in the Wanamaker Ditch * * * together with all other water rights attached to said land"; that in joining in the deed to the corporation February 20, 1926, Blanche Webber had conveyed

to the corporation all of her interest in said water, but that Lyle DeWitt Webber, who was not a party to the 1926 deed, had not conveyed his interest therein prior to his deed to plaintiffs in 1939, and that owning no other water or water right in said ditch, thereby plaintiffs became entitled to thirty inches of water, the interest of Lyle DeWitt Webber in the Wanamaker Ditch out of Priority No. 6 of June 1, 1860. The trial court declined to enter declaratory judgment other than to define the interest claimed by plaintiffs to have been conveyed to them as above outlined, and based upon its findings entered judgment against defendant company permanently enjoining it, its employees and agents "from interferring [interfering] with the continuous delivery to the lands of the Plaintiffs of thirty (30) inches of water from Priority No. 6 of date of June 1, 1860, through the Wanamaker Ditch, out of Clear Creek."

In a study of this controversy it is important, first, to bear in mind that defendant was not organized, nor has it attempted to conduct its business, as a mutual ditch company, but as a carrier for hire. Many of its water users, including plaintiffs, are not holders of any of its capital stock. These facts counsel for plaintiffs admits, and in his brief, in a delineation of the difference between a mutual company and Wanamaker, he goes on to say that whereas in a mutual ditch company the users and owners of the water rights are also the stockholders, in the case of Wanamaker, "the company itself, and not the users, owns the water appropriations which the company in turn sells at a profit to the users, under contract." In the instant case, regardless of whether additional embellishments may have been engrafted upon its structure, it is unquestioned that defendant conducts the Wanamaker Ditch as a carrier for hire. As such it occupies the position of a quasi-public servant, subject to regulation of its rates, and charged with a public duty or trust, *Wheeler v. Northern Colorado Irrigation Co.*, 10 Colo. 582, 17 Pac. 487, and is under enforceable obligation to continue the annual

delivery of water to its land-owner contract holders so long as they pay the regularly fixed carrying charges and comply with the reasonable rules and regulations of the carrier company. *Board of County Commissioners of Jefferson County v. Rocky Mountain Water Co.,* 102 Colo. 351, 79 P. (2d) 373. Being impressed with a public duty, such a carrier is perforce obliged to exercise utmost care to see to it that all of its contract holders are accorded fair and equal treatment and to avoid all discrimination between them.

Defendant corporation annually contracts with the users to furnish specified amounts of water from Wanamaker Ditch to each thereof so long as available, subject to certain conditions, for a fee. Upon payment thereof it issues its receipt and contract by which it agrees, in consideration of the payment of the fee, to deliver the stipulated amount of water during the irrigation season "except when the ditch may be broken, or undergoing repairs, or when the water in Clear Creek is too low to permit an adequate supply for its Ditch, when the Company reserves the right to sectionize its said ditch and alternate the water carried therein and equitably distribute the same."

It is explained in the record by the testimony of different witnesses that by the term "sectionize" is meant a system of proration during period of low supply, and that, throughout the years, it has frequently been the practice of the defendant company, when necessitated by a limited supply of water, to rotate its use by permitting those contract holders in a certain section of the ditch to use all the water for a prescribed period of time, then their headgates are closed and other users permitted to use the water for a like period. Sometimes the ditch is divided into three sections and the water alternated two days on and four days off in each thereof, and sometimes, if there is more water, it is divided into two sections with equal time allowed the users in each thereof.

From the testimony in the record it is quite clear that throughout the period of time when the lands presently

owned by plaintiffs were possessed by Blanche Webber and Lyle DeWitt Webber, the practice of rotation as above described was followed and applied during periods of short water supply, to said lands the same as to other lands irrigated from defendant's ditch. In fact, this practice was pursued after the plaintiffs acquired title to said lands for some six or eight years without objection being made thereto by plaintiffs. But following this initial period of several years, plaintiffs began to assert their claim to a preferred interest out of priority No. 6, which would insure them a continuous flow of water even though other users might be subjected to rotation.

A carrier company organized to take over a pre-existing ditch system, as was defendant, would, of course, take the project subject to outstanding valid contracts or special agreements, but upon one claiming superior, or out of the ordinary, rights by virtue thereof would rest the burden of proving such right by clear and convincing evidence.

From the record in this case it would appear that throughout the trial and the entire proceeding there existed a certain degree of confusion as to just how the right claimed by plaintiffs should be described, or rather, as to exactly what type of right they undertook to claim. It will be noted that nowhere does it appear that they claim any interest in the ditch itself. Plaintiffs' exact position is somewhat difficult to ascertain, but it would seem to be their contention that they have the right as contract holders in the ditch to require the defendant to deliver to them sixty inches of water from Priority No. 6, and that to this extent they are not subject to proration with other users, but have an absolute preference right to require the company as a common carrier of water to prefer them in this regard. This view would appear to have been adopted by the trial court because his injunctive order is not that the company be enjoined from interfering with the right of carriage of water by plaintiffs because of an interest in the ditch owned by them to the extent necessary to carry

sixty cubic second feet of water, but he directs that the company be permanently enjoined "from interferring [interfering] with the continuous delivery" of thirty inches of water from priority No. 6.

■ There is a vast difference between one claiming as a co-tenant in the ditch and one who claims the right to the use of water by virtue of being a contract holder in a carrier ditch. Plaintiffs here seem to undertake to claim the benefits of both types and to avoid the responsibilities of either. They must choose one or the other. They must claim either to be co-owners of a specific interest in the ditch, and assume their proportionate share of the expense of maintenance and upkeep thereof, or, in the absence of proof of a special contract, subject themselves to the rules and regulations of the ditch as other users. It is not claimed by plaintiffs that their predecessors in title were the owners of any special interest prior to the organization of the defendant company, but they insist that by reason of the conveyance hereinabove referred to, they were granted a preference out of the early priority.

Plaintiffs place reliance upon the language in the deeds above referred to: Elizabeth Wanamaker to Blanche Webber in 1910; Blanche Webber to Lyle DeWitt Webber in 1923; and their deed to plaintiffs in 1939. However, in the conveyance by Blanche and Lyle to plaintiffs in 1939, the water right is described as "sixty (60) inches of water in the Wannamaker [Wanamaker] Ditch and fifteen (15) inches of water in Farmers High Line Canal & Reservoir Company, together with all other water rights attached to said land."

The trial court evidently went on the theory that, since Lyle had not previously conveyed the half interest to sixty inches of water from priority No. 6 described in Blanche's deed to him, this passed to plaintiffs under the catch-all phrase of "all other water rights attached to said land," but such a conclusion does not necessarily follow under the facts of this case. First, there is the circumstance that the phrase is very general in its terms and may

have referred to any claimed right under either ditch, or to no right at all. Secondly, there is serious doubt that the right now claimed by plaintiffs was ever "attached to said land," in view of the fact that throughout the years when the land was owned by Blanche and by Blanche and Lyle they asserted no claim to preference but placed dependence for a water supply upon annual contracts with defendant company, and subjected themselves to rotation on a par with other contract holders. Thirdly, even though it may be assumed that Lyle owned a greater interest than he conveyed, he was under no duty to convey all the interest he owned. The recital in this deed may well have been meant to describe the contract interest or right held by those lands in the carrier ditch, although the record is silent as to what that contract actually is.

It was early declared in this jurisdiction that where a deed clearly described the water right intended to be conveyed there is no room for the application of the doctrine of implied grant "The matter is one of conveyance and not of implication, and the extent of plaintiff's water rights is to be determined by the express terms of his deed." *Davis v. Randall,* 44 Colo. 488, 492, 493, 99 Pac. 322. The rule laid down in the Davis case recently was cited with approval and confirmed in *Nelson v. Newmeyer,* 123 Colo. 189, 193, 228 P. (2d) 456, in which it is stated that "Where, in conveyance of land a part only of the pertinent water right is described and specified as being conveyed therewith, such specific designation destroys any presumption of intention to convey the remainder," citing *Davis v. Randall, supra.* We believe it to be clear beyond question, under the facts and circumstances shown by the record in this case, that Blanche and Lyle Webber omitted deliberately and intentionally from their deed to plaintiffs all reference to Priority No. 6, or any attempt to convey any specific right, or to grant a preference to plaintiffs over any user of water from said ditch. Certainly the evidence presented in support of plaintiffs' claim to such a preferred

right is far short of the clear and convincing proof required.

█ The plaintiffs by not claiming to be co-owners in the ditch and by failing to show any specific contract, conveyance or agreement giving them a clear right of preference, fall squarely within the decision of this Court in the case of *Johnston v. Wanamaker Ditch Co.*, 95 Colo. 551, 38 P. (2d) 907, wherein it was held that, in the absence of proven agreement to the contrary, plaintiff could obtain only his portion of the water available and be subjected to rotation along with other common contract holders and users of water from said ditch.

It appearing that the trial court either misapprehended the facts or erroneously applied the law, the judgment must be reversed and such is the order of this Court, together with the direction that the judgment heretofore entered in favor of plaintiffs be vacated and judgment be entered dismissing plaintiffs' complaint.