The CITY OF WESTMINSTER and the
City of Thornton,
Objectors–Appellants,

v.

The CITY OF BROOMFIELD,
Applicant–Appellee,

and

The Agricultural Ditch and Reservoir Company and the Golden Canal and Reservoir Company; the Adolph Coors Company; the City of Arvada; the Consolidated Mutual Water Company; the Farmers Reservoir and Irrigation Company; and the Public Service Company of Colorado, Objectors,

and

Allen Berryman, Division Engineer,
Water Division No. 1.

No. 86SA325.

Supreme Court of Colorado,
En Banc.

Feb. 21, 1989.

Carlson, Hammond & Paddock, Mary Mead Hammond, Paula C. Phillips, Denver, for objector-appellant The City of Westminster.

Broadhurst & Petrock, Kenneth L. Broadhurst, J.J. Petrock, Frederick A. Fendel, III, White & Jankowski, Michael D. White, David F. Jankowski, Denver, for objector-appellant The City of Thornton.

Harvey W. Curtis, Stan L. Waring, Denver, for applicant-appellee The City of Broomfield.

Timothy R. Buchanan, P.C., Timothy R. Buchanan, Laura Bassein, Boulder, for objector The City of Arvada.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Denver, for objector The Public Service Co. of Colo.

No appearance by Objectors The Agricultural Ditch and Reservoir Co. and The Golden Canal and Reservoir Co., The Adolph Coors Co., The Consolidated Mutual Water Co., The Farmers Reservoir and Irrigation Co., or by Allen Berryman, Division Engineer, Water Division No. 1.

Hayes & Phillips, P.C., Herbert C. Phillips, James S. Maloney, Denver, for amicus curiae The City of Northglenn, Colo.

KIRSHBAUM, Justice.

The City of Westminster (Westminster) and the City of Thornton (Thornton) appeal a portion of a decree entered by the water court for Water Division No. 1 approving an application filed by the City of Broomfield (Broomfield) for a change in use of water rights for 292.776 inches of water in the Church Ditch, including three inches of water which are the subject of this dispute.[1] They assert that Broomfield does not own those three inches of water. We affirm.

**I**

The three inches of water in dispute are part of several water rights previously decreed to the Church Ditch. Throughout this century the various owners of the Church Ditch have executed agreements to deliver portions of the decreed water to numerous consumers. In 1978, the City of Northglenn acquired all right, title and interest in the Church Ditch Company (the Company), the then owner of the Church Ditch. In 1983, Northglenn subsequently sold one-third of its interest in the Company to Broomfield. It is undisputed that the Church Ditch is a carrier ditch and that the Company is a carrier ditch company. It is also undisputed that Northglenn and Broomfield are consumers of substantial amounts of water transported in the ditch.

In September 1983, the Board of Directors of the Company declared a forfeiture of nine inches of water previously allocated to various contract consumers because those consumers had failed to pay assessed carrying charges for long periods of time.[2] The Board then allocated three inches of the water so forfeited to Broomfield as co-owner of the Company. The remaining portion of the forfeited water was allocated to Northglenn as co-owner of the Company.

On January 31, 1985, Broomfield applied for a change of use of water rights in the Church Ditch from irrigation to municipal purposes. The application included the three inches of water Broomfield had received from the Company in 1983. Westminster and Thornton, consumers of water in the Church Ditch, filed objections to the application, asserting, *inter alia*, that Broomfield was not entitled to the requested change because the September 1983 allocation to Broomfield of three inches of

---

1. The Church Ditch extends for some twenty-six miles from its headgates in Jefferson County, Colorado, and transports water from Clear Creek and Ralston Creek for irrigation of lands in portions of Jefferson, Adams and Boulder Counties. The parties agree that the disputed water was appropriated to the Church Ditch in decrees dated 1884, 1895, 1912 and 1936. The

record does not reflect all the changes in ownership of the ditch, nor does it contain the contracts governing the rights of the ditch company and of consumers of the water.

2. The parties do not challenge the Board's declarations of forfeiture.

water was not valid.[3] They argued that the Company had a duty to make the forfeited water available to all contract consumers and, therefore, had no authority to allocate the water to the Company's owners.[4]

The water court overruled this objection, concluding that Broomfield, as one-third owner of the Company and, therefore, of the Church Ditch, was entitled to receive the forfeited water and that the Company did not violate any fiduciary obligations to Westminster or Thornton by such conduct. The water court then granted Broomfield's application for change in use of water rights.

## II

Westminster and Thornton argue that the Company, as a carrier ditch, had a fiduciary duty to them and all other contract consumers of Church Ditch water to make the water declared forfeited available to such contract consumers. They further assert that the Company breached this fiduciary duty by allocating three inches of that water to Broomfield and that this court should direct the water court to declare that transaction invalid. We reject these arguments.

This court has on several occasions discussed the nature of carrier ditch companies and, in varying contexts, described particular relationships among carrier ditch companies and those who by contract consume water transported in ditches. *See, e.g., City & County of Denver v. Miller,* 149 Colo. 96, 368 P.2d 982 (1962); *City & County of Denver v. Brown,* 56 Colo. 216, 138 P. 44 (1913); *Combs v. Agricultural Ditch Co.,* 17 Colo. 146, 28 P. 966 (1892);

*Wheeler v. Northern Colo. Irr. Co.,* 10 Colo. 582, 17 P. 487 (1887). *See also Nelson v. Lake Canal Co.,* 644 P.2d 55 (Colo. App.1981). Colorado also has long recognized that major distinctions exist between carrier ditch companies organized to transport and deliver water for hire and mutual ditch companies organized to transport and deliver water to the members of the mutual ditch company. *Jacobucci v. District Court,* 189 Colo. 380, 386–87, 541 P.2d 667, 671–72 (1975); *Nelson,* 644 P.2d at 57–58. *See* C. Kinney, *Law of Irrigation* §§ 1479–1508 at 2659–2714 (2d ed. 1912). We need not reiterate those distinctions here; all parties agree that the Company is a for-profit carrier of water for hire.

■ Colorado's constitution provides that the water of every natural stream not previously appropriated is public property and is dedicated to the use of the people of the state. Colo. Const. art. XVI, § 5; *Wheeler,* 10 Colo. at 587, 17 P. at 489. Our constitution provides, however, that persons, including corporations, may by certain conduct acquire rights to use the state's water. Colo. Const. art. XVI, § 6. A carrier ditch company, by diverting water from natural streams, may acquire a prior right to put the diverted water to beneficial use. *Combs,* 17 Colo. at 150; 28 P. at 967. The water must be put to beneficial use within a reasonable period of time after the diversion, however, before that right is perfected. *Wheeler,* 10 Colo. at 588, 17 P. at 489. *See Miller,* 149 Colo. at 100, 368 P.2d at 984; *Combs,* 17 Colo. at 150, 28 P. at 967.

■ We have recognized that a municipal carrier ditch company may satisfy its

---

**3.** Other parties also filed objections to Broomfield's application; however, only Westminster and Thornton have appealed the final judgment of the water court.

**4.** In its arguments to this court, Thornton has used language suggesting that it seeks recognition of a distinction between the Company's duty to contract consumers and the Company's duty to other bona fide applicants for water carried in the ditch. However, in its notice of appeal and in its opening brief Thornton described the legal issue to be decided as follows:

> Whether a carrier ditch company or the owners of a carrier must provide notice that water has been made available for purchase through the default of a consumer and whether it must sell available water to other consumers under the ditch without preference for the owner or owners of the ditch.

We therefore do not consider what duties a carrier ditch company might have to persons or entities other than contract consumers who claim rights to use water in a carrier ditch under the circumstances here presented.

responsibility of ensuring that diverted water is put to beneficial use by putting substantial amounts of water carried in the ditches it owns to beneficial use on property owned by the municipality. *Miller,* 149 Colo. at 100, 368 P.2d at 985; *Brown,* 56 Colo. at 232, 138 P. at 50. A carrier ditch company that is both the owner of the ditch and the beneficial user of particular water possesses every available legal and equitable interest in the water. *Id.* A carrier ditch company may satisfy its responsibility of putting diverted water to beneficial use by contracting with third parties, subject to constitutional and statutory requirements. When such third parties cease to put the water to beneficial use, the company must again arrange for the beneficial use of the water. From this perspective, the right to arrange for the beneficial use of diverted water resembles a corporate asset. If the company does not take steps to ensure continued beneficial use of the water, the company could lose that asset.

■ It is true that a consumer having a contractually defined right to put a specific amount of water in a carrier ditch to beneficial use has a constitutionally protected right to continue to put the water subject to such contract to beneficial use. *See Board of County Comm'rs v. Rocky Mt. Water Co.,* 102 Colo. 351, 79 P.2d 373 (1938); *Northern Colo. Irr. Co. v. Richards,* 22 Colo. 450, 45 P. 423 (1896). *See also* § 37–85–102, 15 C.R.S. (1973). The extent to which the consumer is entitled to protection is measured in part by the terms of the contract defining the conditions of purchase and delivery of the water.[5] To conclude that such a consumer has a constitutionally protected right to acquire additional rights to put other water in the ditch

to beneficial use constitutes a herculean leap of logic, to say the least.

■ In this case, the objectors have not produced any documents suggesting that they, as contract consumers of particular amounts of water in the Church Ditch, have preferential rights to any other water in the ditch. Nor do the objectors rely on any documents to support their argument that the Company must make all "forfeited" water available to all contract consumers. One document in the record which does discuss the duty of the Company with respect to "excess water" in the ditch is an agreement of February 28, 1983, between Broomfield and Northglenn recognizing Broomfield's ownership of one-third of the Company. Paragraph 10.5 of that agreement specifically provides that the owners of the Company are entitled to share in the ownership of any excess water in the ditch in proportion to their ownership interests.

The objectors argue, however, that the Company has a fiduciary duty as a "trustee," implied by law, to make any forfeited or excess water available to all consumer contractors.[6] We have recognized that a carrier ditch company is a quasi-public entity with quasi-fiduciary duties to its contract consumers in setting rates and in permitting such consumers to exercise their rights to continue to put water to beneficial use on an annual basis. *Brown,* 56 Colo. 216, 138 P. 44; *Wheeler,* 10 Colo. 582, 17 P. 487. We have also recognized that the fiduciary duties of a municipal carrier ditch company that is both owner of the ditch and beneficial user of water in the ditch differ from the duties other carrier companies might have to other consumers with respect to that water. *Miller,* 149 Colo. at 99–100, 368 P.2d at 984–85.[7] In any event, as we have observed, a carrier

---

**5.** The record does not contain copies of documents describing any rights of particular contract consumers to forfeited water.

**6.** The objectors do not precisely indicate what formula might be implied by law to assure fair treatment to all consumers. For example, any competitive bidding process would no doubt be subject to relevant constitutional and statutory provisions respecting the establishment of fair rates for access to water conveyed by ditch

companies. *See, e.g.* Colo. Const. art. XVI, § 5; § 7–42–107, 3A C.R.S. (1986). Presumably the owners, who in this case are also consumers, would not be prohibited from sharing in the use of such newly available water.

**7.** The record in this case does not permit the assumption that the three inches of water in dispute were initially put to beneficial use by any initial owner of the Church Ditch.

ditch company must ensure that diverted water is put to beneficial use continuously, to protect the rights of its contract consumers and to further its responsibility to preserve corporate assets.

The objectors apparently assume that the disputed water in this case in some manner constitutes a new asset of the Company. However, it is not controverted that the three inches of water here disputed were initially decreed to the Church Ditch. The Company, as owner of the ditch, never lost the responsibility to ensure the continued beneficial use of that water. The Company's decision in 1983 to permit the owners to put the water to beneficial use did not dispose of any new corporate asset.

We reject the argument that the quasi-fiduciary responsibilities of a carrier ditch company to its contract consumers include the duty to make available to all such consumers any water previously decreed to the ditch and declared forfeited because of nonpayment of assessment charges. Absent some constitutional or legislative prohibition, the company may discharge the responsibility of ensuring that the water continues to be put to beneficial use in any manner authorized by charter, bylaw or agreement. In this case, we conclude that the Company breached no duty to Westminster or Thornton by allocating the disputed three inches of water to Broomfield in conformity with provisions of the 1983 agreement governing rights of the Company's owners.

### III

This view of the rights and responsibilities of a carrier ditch company with regard to water rights initially decreed to the ditch owned by the Company finds support in statutory provisions regulating the conduct of ditch companies. In sections 7–42–101 to –118, 3A C.R.S. (1986), the General Assembly has addressed problems faced by all ditch companies.[8] For example, procedures for effecting transfer of shares of stock in the corporation and for declaring

forfeitures of stock shares are matters to be defined by corporate bylaws. § 7–42–104(4). Furthermore, a ditch company is authorized to acquire any outstanding shares of capital stock unless such acquisition would render the corporation insolvent. § 7–42–105(1). These provisions do not impose or imply any special obligation upon ditch companies to offer stock shares or other assets to non-shareholders in any particular matter. To the contrary, the General Assembly has elected to leave such matters of corporate governance to the corporate directors, as provided by charters and bylaws.

Westminster argues that the provisions of section 7–42–107 impose a special duty upon carrier ditch companies to make all "excess" water available to contract consumers rather than to the owners of the corporation. That section states as follows:

> **Shall furnish water to whom—rate.** Any corporation constructing a ditch under the provisions of law shall furnish water to the class of persons using the water in the way named in the certificate, in the way the water is designated to be used, whether to miners, millmen, farmers, or for domestic use, whenever it has water in its ditch unsold, and it shall at all times give the preference to use of the water in said ditch to the class named in the certificate. The rates at which water shall be furnished are to be fixed by the board of county commissioners as soon as the ditch is completed and prepared to furnish water.

Section 7–42–107, 3A C.R.S. (1986). We read no such fiduciary requirement into these legislative provisions. The section refers to the certificate of incorporation of a ditch company as the basic source for particular rights of users to any "unsold" water and for any preferential treatment of particular classes of persons entitled to use the water decreed to the ditch. The section also establishes the means for setting the rates a ditch company may charge users of

---

**8.** These provisions do not by terms distinguish between "mutual" and "carrier" ditch compa-

nies.

the water. The statute does not, as Westminster suggests, impliedly recognize any preferential right of a contract consumer over the rights of owners of the company with respect to re-allocations of water previously used by other contract consumers.

Westminster also asserts that it was entitled to water pursuant to section 37–85–110, 15 C.R.S. (1973).[9] This statute declares that the refusal of a ditch owner to deliver water to a bona fide applicant, after written demand and payment of the lawful rate, constitutes a misdemeanor offense absent certain conditions justifying the refusal. On April 13, 1983, Westminster Director of Utilities, then Robert Ferguson, wrote to the Chairman of the Church Ditch Board of Directors, Dave Hawker, requesting that Westminster be notified in the event excess water might become available in the ditch.[10] On May 27, 1983, Hawker wrote a letter to Ferguson stating: "The City of Northglenn will be happy to inform Westminster whenever there is excess water available which cannot be used by Northglenn, and will recommend to Broomfield that it do the same." Westminster asserts this correspondence established its right to acquire the water allocated to Broomfield. Westminster's letter does not constitute a demand for any specific amounts of water. It merely requests noti-

fication of future events to permit Westminster to make future demands for additional water if it so elected. Furthermore, Northglenn's response neither recognized nor created any preferential rights in Westminster to water decreed to the ditch other than the amount of water to which Westminster was entitled. In fact, the response in effect reserved the rights of the Company's owners to put any excess water to beneficial use. Finally, as we have previously indicated, the owners of a carrier ditch company may put excess water to beneficial use themselves in the absence of prohibitions contained in the company's charter or bylaws. For these reasons, we reject Westminster's argument.

## IV

For the foregoing reasons, we conclude that the Company did not violate any fiduciary duties to the objectors by allocating to Broomfield three inches of water previously decreed to the Church Ditch. Accordingly, the judgment of the water court is affirmed.

ERICKSON, J., specially concurs.

ERICKSON, Justice, specially concurring:

The City of Broomfield filed an application for change of water rights and sought

---

9. Section 37–85–110, 15 C.R.S. (1973), states as follows:

**Penalty for refusal to deliver water.** Every person owning or controlling, or claiming to own or control, any ditch, canal, or reservoir, such as is mentioned in section 37–85–108, who, after demand in writing made upon him for the supply or delivery of water for irrigation, mining, milling, or domestic purposes, to be delivered from the canal, ditch, or reservoir, owned, possessed, or controlled by him, and after tender of the lawful rate of compensation therefor in lawful money, refuses to furnish or carry and deliver from such ditch, canal, or reservoir any water so applied for, which water may be by use of reasonable diligence in that behalf, and within the carrying or storage capacity of such ditch, canal, or reservoir, be lawfully furnished and delivered, without infringement of prior rights, is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars nor more than five thousand dollars, or by imprisonment in the county jail for not less

than three months nor more than one year, or by both such fine and imprisonment.

10. Pertinent parts of the letter state:

At present, Westminster holds the right to receive annually 653.48 inches of water from the Church Ditch.

It is our understanding that in certain recent years, water has been available in the Church Ditch over and above the amount of water called for by the holders of existing rights in the Ditch. In such circumstances, statutory and common law in Colorado require the owner of the carrier ditch to make such water available to those requesting the water. Should such excess water become available ... Westminster requests that it be notified of the availability of such water, so that it will be given a reasonable opportunity to purchase such water.

....

I would appreciate the opportunity to discuss this matter further with you in order to finalize a notification procedure, as well as delivery and payment details.

to acquire the right to purchase three "inches" of water in a carrier ditch that is commonly identified as the Church Ditch. The controversy in this case arises out of the acquisition of forfeited water rights by Broomfield and Northglenn, who own the Church Ditch Company. The water court granted the requested change of use and upheld the acquisition of the forfeited rights by Broomfield.

No question exists regarding the right of the Church Ditch Company to declare forfeiture of the water rights in question. The sole issue before us is whether Broomfield or Northglenn, as owners of the Church Ditch, could acquire the forfeited water rights without offering the rights to other water contract users of the ditch. I agree with the water judge and his conclusion that:

"[A carrier ditch] occupies the position of a quasi-public servant, subject to regulation of its rates, and charged with a public duty or trust, [citation omitted] and is under enforceable obligation to continue the annual delivery of water to its land-owner contract holders so long as they pay the regularly fixed carrying charges and comply with the reasonable rules and regulations of the carrier company. [citation omitted] Being impressed with a public duty, such a carrier is perforce obliged to exercise utmost care to see to it that all of its contract holders are accorded fair and equal treatment and to avoid all discrimination between them."

*Wanamaker Ditch v. Crane,* 132 Colo. 366, 288 P.2d 339 (1955).

Although the obligation to avoid discrimination among contract holders is undoubtedly a feature of Colorado law it applies only to the extent of the existing contracts. It does not extend to the issuance of new contracts.

"The legal title to the decreed appropriation from the natural stream, however, belongs to the carrier which has a duty to protect it for the benefit of the consumers under the ditch. The carrier also has sufficient interest in the water right that unused rights of the consumer do not cease to exist but may be held by the carrier for sale to other consumers and thus no part of the full decreed appropriation to the carrier ditch need be abandoned to the source stream."

*Denver v. Miller,* 149 Colo. 96, 368 P.2d 982 (1962).

The right of the carrier to sell unused or forfeited rights is recognized. No indication is made that unused or forfeited rights revert to the other consumers on a pro rata or a "first-come-first-served" basis, as is essentially the contention of Westminster and Thornton.

It is undisputed that Broomfield and Northglenn had suitable beneficial uses for the forfeited rights. There was no impropriety in their assignment of those rights to themselves. The proprietor of a carriage ditch may apply a portion of the water of that ditch to a beneficial use, and when this occurs the contract right ripens into a full water right. *Denver v. Miller, supra.*

There is no reason why these three inches of Church ditch water may not be included in the change of use ordered in this case.

Therefore, I specially concur in the opinion of the court.