## No. 12,261.

### Wanamaker Ditch Company *v.* Pettit et al.

(3 P. [2d] 295)

Decided June 22, 1931.   Rehearing denied September 14, 1931.

Mr. John R. Smith, Mr. F. E. Gregg, for plaintiff in error.

Mr. Henry McAllister, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court and for convenience we refer to them as plaintiff and defendants.

Plaintiff owns the Wanamaker Ditch from which, for many years, defendants have taken water for irrigation. They claim they are owners of an interest therein and have the right to take their water without charge save their proportionate share of the expenses of upkeep. Plaintiff's position is that they are subject to the same charges for delivery as strangers.

In 1907, Thomas Williams purchased from the then owners, four hundred acres, known as Standley Heights, and a half interest in said ditch. The following year the board of county commissioners of Jefferson county, acting under authority of sections 1742 to 1751 inclusive, C. L. 1921 (Laws 1887, pp. 291 and 308), fixed the maximum compensation for the delivery of water through the ditch in question at $1.50 per statutory inch, expressly excluding from the operation of its order existing contracts. In 1909 defendants bought of Williams thirty acres in Standley Heights, including water right or interest in the ditch, as the case may be. The transfer was by deed duly recorded, the pertinent portion whereof reads:

"Lots numbered nine (9) ten (10) and eleven (11) in Standley Heights according to the recorded plat thereof, being thirty acres more or less in the South half of the North East Quarter Section Seventeen Township Three South, Range Sixty Nine West. Also the proportion of water right from the Wanamaker Ditch as belongs to said Standley Heights, said Standley Heights consisting of about 412 acres being entitled to one-half of the waters of said Wanamaker Ditch according to its appropriations. Also the right to convey said water through the ditches as now and heretofore used for that purpose. Reserving the right to convey water through above conveyed land to other parts of said subdivision. Above appropriations referred to being covered by priorities numbered 6 and 52 as per decree of the District Court of Arapahoe County, Colorado, dated October 4, 1884. Said proportion of water right appertaining to the thirty acres of land hereby conveyed being about $31\frac{1}{2}$ inches in accordance with the appropriations of 420 inches of water for 412 acres of land.

"Together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining * * *." Otherwise this document is the usual form of warranty deed.

At the time this transfer was closed Williams agreed with defendants that they would have no additional expense save their proportion of maintenance which would not exceed twenty-five cents per acre per annum. In 1910 the Wanamaker Ditch Company was incorporated and then or thereafter the interests of Williams and the other owners in the ditch were conveyed to the corporation. 12,000 shares of stock were issued of which one-half went to Williams who became, and remained until his death in 1917, president of the company. From the date of their purchase until 1923 defendants each year paid Williams, or the company, $7.50, save for 1914 when the amount was $4.80. Checks and correspondence clearly show the foregoing and leave no doubt as to the under-

standing of the parties. A certificate for 30 shares of the company's stock was written up in the name of defendants, without their consent, and remained in the stock book. December 2, 1913, Williams, then president of the company, sent defendants a bill for $7.50 as their share of the 1913 expense, showing the total and how it was apportioned, and added:

"This year you would not have to pay if you had your stock; you would also have a small balance coming to you. Your stock is ready for you any time you want it."

For each of the years 1924, 1925, 1926 and 1927 defendants tendered $7.50 as their share of the upkeep, which tenders were rejected. Thereafter plaintiffs brought this suit to recover at the rate fixed by the county board. The total alleged due was $540 on which credit was allowed for payments made by defendants, plus dividends credited to them as stockholders, of $162.85, and judgment demanded for the balance, i. e., $377.15. Defendants answered that they were owners in fee of an interest in the ditch entitling them to 31½ statutory inches of water therefrom free of all delivery or other charges save their pro rata share of annual upkeep, not exceeding $7.50 per year, which they had paid or tendered. They also pleaded estoppel. The cause was tried to the court without a jury. Findings were that defendants were joint owners, bound to pay their pro rata of upkeep; that the contract with Williams for a maximum of twenty-five cents per acre did not run with the land, hence did not bind the plaintiff; and that the order of the county board was not binding on defendants. There was no evidence of the cost of upkeep for the years in dispute, but since defendants admitted liability for twenty-five cents per acre per annum judgment was entered against them for the balance due at that date, i. e., $30. To review that judgment plaintiff prosecutes this writ.

Two questions are presented by this record: (1) Are these defendants co-owners of the Wanamaker Ditch, or is their status that of stockholders in the corporation?

(2)   Is plaintiff bound by the Williams contract for a maximum upkeep of $7.50 per annum?

1.   That defendants are co-owners we have no doubt.   They bought land to which this water belonged. The project at that time was privately owned and unincorporated.   Their grantor was one of the owners.   He sold them whatever in the way of irrigation water belonged to the land transferred.   The deed recites that Standley Heights, of which their purchase was a part, was entitled to one-half the water of the ditch ''according to its appropriations.''   ''The right to convey said water through the ditches as now and heretofore used for that purpose'' was the right of an owner of land and ditch, which was the position of their grantor Williams.   If there is any ambiguity in this deed it is cleared up by the construction put upon it by the conduct of the parties. Defendants could not be forced to forfeit their rights in exchange for stock.   The effort to induce them to do so, and their refusal, are beyond question.   They ignored the pretended dividends credited, and refused to take the stock issued to them.   Their deed was on record when the plaintiff corporation was organized and it was charged with knowledge of their rights thereunder. *Grand Valley Irr. Co. v. Lesher,* 28 Colo. 273, 288, 65 Pac. 44.   Williams, as president of the company and acting for it, continued to recognize those rights.   Certainly as a tenant in common with the other owners of the ditch he could not convey the common property; he could however convey to defendants a portion of his interest therein, whereupon they became tenants in common with all. *Wanamaker Ditch Co. v. Reno,* 79 Colo. 153, 161, 244 Pac. 602.

Defendants might with equal force maintain that the transfers by Williams and others of their interests to the corporation were invalid.   The rate fixed by the county board had no application to Williams who was appropriating and using water through his own ditch. When defendants bought they stepped into his shoes to

the extent of their purchase. Reference to the sections of the statute under which the county board acted clearly demonstrates that they had no application to defendants. The language is "parties  *  *  *  delivering for compensation  *  *  *  or  *  *  *  procuring for such compensation." Again, "Water  *  *  *  to be furnished or delivered for compensation  *  *  *  to persons not interested in such ownership or control."

█ Moreover, since upon the organization of the company its total stock was issued pro rata to the former owners of the ditch, the undelivered certificate to defendants and the company's effort to induce them to accept it, is evidence of its recognition of their ownership of an interest.

█ 2. It seems perfectly clear that the Williams guarantee to defendants of a maximum annual pro rata upkeep of $7.50 is not a covenant running with the land. Herein however that question is unimportant. Certainly this plaintiff could ratify and adopt it for itself, either expressly or by implication to be gathered from its conduct, and its course of dealing with defendants over a period of thirteen years as clearly establish such ratification.

█ Notwithstanding the absence of evidence of cost of upkeep during the years in dispute we see no objection to the judgment as entered. Plaintiff demanded a much larger amount. Defendants admitted their liability to this extent. The theory of the court does not concern us. Defendants are not objecting to the amount and plaintiff is in no position to do so.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE BUTLER and MR. JUSTICE MOORE concur.