## No. 12,363.

NORTHERN COLORADO IRRIGATION COMPANY *v.* BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY ET AL.

(38 P. [2d] 889)

Decided November 19, 1934. Rehearing denied December 10, 1934.

Mr. Thomas H. Gibson, Mr. Milnor E. Gleaves, Mr. Charles H. Haines, Mr. James D. Parriott, Mr. Roy C. Hecox, Mr. Malcolm Lindsey, Messrs. Dines, Dines & Holme, Mr. Cass E. Herrington, Mr. Harold D. Roberts, Mr. Cass M. Herrington, for plaintiff in error.

Mr. C. H. Pierce, Mr. Sidney P. Godsman, Messrs. Ireland & Blackman, Messrs. Wright & Ireland, for defendants in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

In January, 1928, the Northern Colorado Irrigation Company, a Colorado corporation, which was incorporated in December, 1879, instituted an action in the district court of Arapahoe county, Colorado, designated in the record now before us as cause No. 2249, against the board of county commissioners, and individual defendants who are residents, of that county. The object of this action, as stated in the complaint, is to secure a court

decree prohibiting the defendants from enforcing, or attempting to enforce, the rate of $1.75 per acre theretofore fixed by the board as a charge for carrying and delivering water in plaintiff's High Line Canal; and also to restrain defendants from instituting any kind of judicial proceedings, civil or criminal, against the plaintiff and its officers for ignoring the action of the defendant board in assuming thus to establish or fix a carrying charge other than that theretofore fixed by the plaintiff itself, which power, as the complaint alleges, is by the Constitution and statutes of the state of Colorado, and by contract and agreement between the plaintiff and the water users under the canal, vested in, and possessed solely by, the plaintiff company.

The complaint further states that the plaintiff is a corporation organized and existing under and by virtue of the pertinent statutes of the state of Colorado and for more than forty years last past has been, and still is, the owner of a certain irrigating ditch known as the High Line Canal, the headgate of which is situated on the south and east side of the South Platte river in Douglas county, Colorado, and such carrying canal extends northeasterly from this headgate for a distance of about eighty-three miles through the counties of Douglas, Arapahoe, the City and County of Denver, and Adams, in the state of Colorado. For more than forty years last past the plaintiff has been diverting 600 cubic feet of water per second of time from the South Platte river by means of its canal, which water has been applied to domestic and agricultural uses and the same has been duly adjudicated to the canal by priority as of January, 1879. More than forty years ago the plaintiff sold to various persons owning tracts of land under its irrigating ditch—which tracts lie within the above-named counties—water rights for water for such lands to be delivered through its canal, and conveyed such water rights by deeds purporting to give, among other things, to the grantees named therein, the right to use water diverted from the South Platte river

by the plaintiff, subject to certain specified conditions, restrictions and regulations, one of which provides that the grantee in the deed shall pay annually in advance such a reasonable rental per annum for the use of the water delivered by the northern company, not less than $1.50 per acre and not more than $4.00 per acre, as may be established from year to year by the plaintiff northern company, owner of the canal, according to the situation and locality of the land and all other circumstances proper to be taken into consideration, and upon such conditions, restrictions and exceptions as are specified in the agreement itself. The tenth clause of such deeds provides that the northern company shall have the right to add to and change and modify the rules and regulations prescribed in this contract from year to year so far as may be reasonably necessary to regulate the delivery and distribution of water to the consumers under the canal.

Another action in the same court, cause No. 2215, was instituted by water consumers under the High Line Canal. The complaint in this action, based upon our declaratory judgment statute, named as defendants the Northern Colorado Irrigation Company and the board of commissioners of Arapahoe county. Upon petition of plaintiff, which was granted by the trial court, the boards of county commissioners of the counties of Adams and Douglas were made parties defendant therein in addition to the original defendants named as such in the complaint. The object of this action was to obtain a declaratory judgment by the trial court fixing a reasonable maximum rate to be charged by the Northern Colorado Irrigation Company for carrying and delivering water through its High Line Canal to the consumers thereunder in the three counties of Douglas, Arapahoe and Adams.

These two actions were, by agreement of the parties and by permission of the trial court, consolidated for hearing as one and tried to the court itself without a jury. The hearing consumed thirty days. Much written evidence was introduced and the testimony of numerous wit-

nesses heard. The trial court found all the material and controlling issues, both law and fact, in favor of the defendants and rendered judgment for them and against the plaintiff substantially as prayed for. The abstract of the record proper and of the evidence is condensed in seven printed volumes aggregating more than 10,000 folios in 3,300 printed pages. In passing we are constrained to say that the trial court might well have restricted the parties in the production of evidence, both oral and written; but as trial was to the court without a jury the judge patiently permitted the parties almost unrestricted liberty in the production of evidence.

The Northern Colorado Irrigation Company is the nominal party plaintiff. Its entire capital stock and all of its property and property rights, however, were, before this action was begun, acquired, and are now owned, by the City and County of Denver, a municipal corporation. The city, therefore, is the real party plaintiff in the action and the plaintiff in error on this review, although the complaint designates the irrigation company as plaintiff. A group of individual water users under the canal and the boards of county commissioners of Arapahoe, Adams and Douglas counties of the state of Colorado are the defendants in error and were the defendants below. Counsel for the plaintiff in error in their opening brief say: "Each of the actions in the lower court was brought for the sole purpose of determining the comparatively simple issue of whether the Northern Colorado Irrigation Company plaintiff, or the defendant county commissioners, had the right to fix the annual carrying rate to be charged the water users. The reasonableness of the particular rate attempted to be fixed by these three boards of county commissioners was also in issue. Voluminous testimony upon this latter point is largely responsible for the size of the record." The northern company, relying upon the express terms of its contracts with water users had fixed the rate of $2.25 per acre. The trial court held that the power to

fix the rate was vested in the respective county commissioners, not in plaintiff, but that the particular rate fixed by these commissioners of $1.75 per acre was confiscatory. The lower court, therefore, authorized and permitted the collection by plaintiff of a rate of $2.00 per acre until some different rate should be lawfully fixed by the commissioners, but enjoined the collection of any rate in excess of $2.00 per acre unless and until the commissioners should so order. This order in effect fixed the rate for the time being at $2.00 per acre, leaving the commissioners free to act in the future, subject only to the finding that any rate as low as $1.75 would be confiscatory upon the basis of the conditions then existing.

The record in this complicated controversy, to say the least, is confusing, if not inconsistent with itself. The abstract thereof as prepared by the plaintiff in error recites several distinct findings of fact followed by several purported inconsistent final decrees based thereon. The trial court, however, in what purports to be, and what the court itself denominates, its final decree of March 16, 1929, and what we conclude is such, refers to all former findings and decrees and says that they are, and each of them is, to be considered only as tentative or provisional in character. The decree then thus recites what it expressly declares to be its only findings and final decree in the case:

"The Court finds that the rate of $1.75 per acre for the carriage of water by the plaintiff corporation through its ditch to its consumers, as fixed by the Boards of County Commissioners of the Counties of Arapahoe and Adams, is unreasonable and confiscatory of the property of said plaintiff corporation.

"The Court finds that the rate of $2.25 per acre per year for the carriage of water through the canal of the plaintiff corporation to its consumers, as attempted to be fixed and charged by the plaintiff corporation through its Board of Trustees, or any sum above that of $2.00 per acre per year, is unreasonable and not justified under the

present conditions, unless and until such a rate is first fixed by the Board of County Commissioners having jurisdiction thereof, and for and during the time proceedings are pending before said Board in said matter and until the final determination thereof.

"The Court further finds that the plaintiff corporation, The Northern Colorado Irrigation Company, is in the control of the City and County of Denver, acting through its Board of Water Commissioners and through electing themselves trustees of the said corporation, and that said corporation cannot defend in its own behalf or in the behalf of its water consumers, the defendants herein, against any claim, suit or proceeding instituted or to be instituted by the City and County of Denver, and that any such suits as now conducted, or as may be conducted hereafter between said parties would be a sham and pretense of legal litigation.

"The Court finds that the City and County of Denver owns all of the capital stock of the plaintiff corporation and by and through the Water Board of said City and County electing some of their number as trustees of plaintiff corporation it completely controls said corporation's property, moneys and business; that in controlling said corporation said trustees are acting in behalf of and for the sole benefit of said City and County, and said corporation has no existence outside of or separate from said City and County, except in name; that said City and County owns certain water rights out of the Platte River in conflict with the water rights and priorities owned by the plaintiff corporation and its water users, including defendants herein, and said City and County is claiming other rights to water and priorities out of said river adverse to the rights of the plaintiff and the defendant consumers, and if said claims of said City are established said consumers and the plaintiff corporation will be deprived of a large part of said water rights and suffer irreparable damage. Said claims are more specifically described as follows: A claim for 130 cubic feet per

second of time of water out of said river as of priority 1870 and prior to the adjudicated priority of plaintiff corporation and its consumers of 1870, which claim is in process of trial and determination in a case now pending in the Supreme Court of the State of Colorado and a further claim for 378 cubic feet of water per second of time out of said river, and another claim for 263 cubic feet per second of time of water out of said river as of priority of 1878 for power purposes, which said rights are claimed as prior to the decreed rights of the plaintiff corporation and its water consumers, which said claims are now in process of adjudication in an adjudication proceeding pending in the District Court of Douglas County.

"In said suits and proceedings the City and County of Denver is a party, making claims to said rights, and plaintiff corporation is a party resisting said rights of said City and County; that said plaintiff corporation is by virtue of the laws of the State of Colorado a necessary and proper party to said proceedings and suits in its own behalf and as the trustee and representative of its water consumers, and the rights of said water consumers cannot be properly presented or adjudicated without the said plaintiff corporation prosecuting said causes and defenses thereto in good faith to a final determination, and that by reason of the fact the said City and County of Denver through its Water Board is in absolute and complete control of said corporation, and all of its funds, and by reason of the fact that the interest of said City and County of Denver in said litigation is adverse and hostile to the rights and interests of the plaintiff corporation and its water consumers, it is impossible for said corporation to perform its duty under the law in representing itself and in representing its water consumers as their agent and trustee in said suits and proceedings."

Upon such findings the court thereupon adjudged and decreed:

"1. That the defendants be and they are hereby restrained and enjoined from enforcing or attempting

to enforce the rate of $1.75 per acre per year as fixed and determined by said Board of County Commissioners, as shown by the proceedings in evidence herein.

"2. The plaintiff is hereby enjoined from demanding or collecting more than $2.00 per acre per year as a rate for delivery of water to its water consumers until said rate shall be fixed by the Board of County Commissioners in conformity with this decree and such other and further proceedings as may be had before said Board.

"3. That a Receiver be appointed herein to take possession of and charge of the property and assets of the plaintiff corporation, The Northern Colorado Irrigation Company, and manage its business for and during the pendency of this suit, and for and during the pendency of said suits in the Supreme Court of the State of Colorado hereinabove mentioned and said suit or adjudication proceeding pending in the District Court of Douglas County as hereinabove set forth, and that such Receiver shall have such powers under the order of the Court as may be necessary to carry out this decree. This decree shall be held to determine the unreasonableness of the rate as fixed by said Board of County Commissioners as of the date when so fixed, and for such future time as the conditions then existing may continue without material change, and until said Board of County Commissioners may legally further determine what is a reasonable rate.

"4. That the temporary injunction heretofore granted in this cause enjoining the collection of more than $1.75 per acre by the plaintiff from its consumers for the year 1928 and future years is hereby dissolved.

"5. That the findings and decree of the Court herein shall apply to the years 1928 and 1929 and future years, until otherwise changed in accordance with law, and that during the pendency of this proceeding that the said plaintiff corporation shall be allowed to collect from its consumers for carriage of water through its ditch per year, beginning with 1928, the sum of $2.00 per acre.

"6. This decree shall be held to contain all of the find-

ings of the Court and any previous pronouncements or opinions of the Court shall be held to be merged herein, and shall be held to be modified so far as to conform to the findings of the Court in this decree.''

The decree further proceeds to state that the same was not to be held to adjudicate certain other claims or controversies between the respective parties to this action not involved in the issues as made by the pleadings in the case.

In their only written contract of 1904 with the plaintiff carrier the consumers agreed to pay a rate for such carriage of not less than $1.50 per acre and not more than $4.00 per acre as should be established annually by the plaintiff corporation itself. When these landowners, defendants, at a later date in 1910 became dissatisfied with the rate as theretofore fixed by the carrier as excessive, litigation followed between them in a suit in the district court of Arapahoe county, No. 376, which resulted in a decree by the court in 1911—Judge McCall presiding— in favor of the plaintiff northern company. This decision in effect sustained as legal and valid the contract price per acre as contained in the original contract between the parties. No appeal from, or writ of error to, such decree of Judge McCall has been had or taken by the landowners and the plaintiff corporation in this action pleads this judgment as res judicata of the present controversy. Referring to the statement of counsel for plaintiff in error that the sole purpose of the pending action is, and the sole purpose of the 1911 action was, to ascertain whether the plaintiff company or the county commissioners of the respective counties had the right to fix the annual carriage rate to be charged to the water users, we observe that in their opening brief they have assigned numerous specific errors to the decree of the trial court that do not come within the scope of this classification. The chief reliance, however, of plaintiff in error for reversal seems to be the alleged error of the trial court in its holding that the 1911 decree of the dis-

trict court of Arapahoe county is not res judicata of the present controversy. At the risk of repetition we say that the decree of Judge McCall held that the plaintiff there, who is the plaintiff in the action now before us, possesses the sole power, subject only to a review by the courts, to prescribe a rate for the carriage and delivery of water to the consumers under its canal. And as no review of such decree has ever been had the plaintiff says the matter of the rate has, therefore, become and is res judicata of the present controversy.

The leading case which the plaintiff cites in support of its contention as to the effect of the McCall decree is *Fauntleroy v. Lum*, 210 U. S. 230, 28 Sup. Ct. 641, 52 L. Ed. 1039. It involved a cause of action arising out of a gambling transaction in cotton futures. In the course of the opinion Mr. Justice Holmes, in speaking of the effect of a judgment, at page 237, said: "A judgment is conclusive as to all the *media concludendi*, * * *; and it needs no authority to show that it cannot be impeached either in or out of the State by showing that it was based upon a mistake of law. Of course a want of jurisdiction over either the person or the subject-matter might be shown." Just why this case was cited by counsel for plaintiff in error we are at a loss to conceive. In the suit before Judge McCall there was jurisdiction of the person of defendant, but not of the subject matter of the action. The subject matter of that action concerned the depository or possessor of the power to establish rates for the carriage and delivery of water to water consumers thereunder. Judge McCall held that plaintiff northern company only had such power. We are not unmindful of the salutary rule respecting the doctrine of res judicata which in a proper case, should unhesitatingly be applied, but it does not follow that it should be enforced in the absence of the principle upon which it rests. The facts of this case show conclusively that in the case before Judge McCall jurisdiction of the subject matter was lacking, as we proceed to demonstrate.

██ ██ Our state Constitution was adopted in 1876. The provisions of that instrument that are involved and which are material in this controversy were a part of our Constitution as it was adopted in that year. Article XVI of that instrument treats of two subjects: Mining and irrigation. Section 8 thereof is pertinent to the present controversy. It reads: "The general assembly shall provide by law that the board of county commissioners in their respective counties shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations." In pursuance of these constitutional provisions our general assembly, in section 1741, et seq., C. L. 1921, Session Laws of 1879, declared that the county commissioners have the power to fix and determine the price for the carriage and delivery of water which is to be used for the irrigation of lands. Section 2359, C. L. 1921, provides that the county commissioners, when an irrigating ditch is completed and prepared to furnish water, may prescribe the rates at which water shall be furnished. Sections 1742, 1743, 1744, and 1745, C. L. 1921, contain provisions which specifically confer upon the county commissioners the power to fix the maximum rate of compensation for the carriage of water to be used for irrigating agricultural lands. And so both by constitutional and statutory provisions relating to rates for carrying and delivering of water, the county commissioners are vested with power to fix the rates for carriage. Necessarily, therefore, the carrier of such water does not possess the rate-making power. If, however, the carrier assumes and exercises such power, its acts would be subject to a review and change by the county commissioners upon a proper showing. This, in effect, was decided by our court in *Montezuma W. & L. Co. v. McCracken,* 62 Colo. 394, 163 Pac. 286. In an exhaustive opinion by Mr. Justice Scott, at page 399, it is said: "It is the continuing duty of the board of county

commissioners, in the manner prescribed by law, to fix reasonable rates" (for carrying water for irrigation).

But counsel for plaintiff say that these statutory and constitutional provisions are not applicable to, and do not affect or control, this case because the water consumers concerned entered into contracts with the plaintiff carrier, the terms of which in effect provide that the carrier shall have the power to fix, and it has fixed, the rate to be charged for carriage and delivery of water to the consumers under the High Line Canal. It is true that such a contract was made in this case, but it does not necessarily follow that the same is binding upon either party. If, as we have just shown to be true, the county commissioners have been invested with this power by our Constitution, and have exercised it, to establish the annual maximum rate for the carriage and delivery of water to the consumer, it would seem to follow that the carrier is not vested with power to prescribe the rate which it shall receive for its services. This contract, therefore, between the carrier and the consumer, whereby the carrier attempts to fix and collect the rate for carrying and delivering water to the consumer, is not binding on the latter because the Colorado Constitution and statutes upon the subject have conferred upon, and vested in, the county commissioners of the respective counties the exclusive power to fix the rate for such service. Neither the carrier nor the landowner owns the water diverted from the natural stream. They have only the use thereof under regulations prescribed by the state. Ownership of the water of natural streams still remains with the state. Its use by the carrier and landowner under the ditch is by permission of the state. It necessarily follows that this contract between the carrier and water consumers is not binding upon either because the Constitution and statutes of Colorado have lodged the rate-making power elsewhere.

We are not without authority for our statement that the power to fix rates is with the county commis-

sioners. In *Idaho Irrigation Co. v. Gooding,* 265 U. S. 518, the Supreme Court of the United States had before it for review a decree of the United States Circuit Court of Appeals of the Ninth Circuit, which had affirmed a decree of injunction entered by the Federal District Court, which prevented an irrigating company from disposing of further water rights of an irrigation project in violation, as it was claimed, of the plaintiff's contract rights. The contract thus relied upon gave to the plaintiff the right to more water than the irrigating company, the carrying corporation, turned out to his ditch. Such allowance to the plaintiff, however, was much less than the quantity which, by his contract with the carrier, he was entitled to have carried and delivered to him at the headgate of his lateral ditch. Nevertheless, the United States Supreme Court held, on the review of such judgment of the Appeals Court, that such diminished allowance could not be set aside because of a state statute of Idaho forbidding the use by any water right owner of more water than good husbandry requires. And the Supreme Court further held, what is directly pertinent here, that the state statute should be read into plaintiff's contract with the carrying ditch owner. Applying the doctrine of the Idaho case to the one now before us, we say that although the plaintiff Northern Colorado Irrigation Company had a contract with its water consumers by which they were required to pay a designated price for the carriage and delivery of water at their respective headgates, nevertheless, the Constitution of the state of Colorado in section 8 of article XVI expressly commands the general assembly to "provide by law that the board of county commissioners in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations." This constitutional power to prescribe such a rate has been recognized by our general assembly repeatedly. It is not a divisible power and the

general assembly could not, if it would, divest itself thereof and confer it upon the carrier and thus nullify the constitutional provision above cited which expressly gives such power to the respective county commissioners.

Counsel for plaintiff in error devote much space in their briefs to the contention that the trial court should not have appointed a receiver, as it did in this action, since the city of Denver, one of the defendants, is a municipal corporation and a receivership for such a public body is inappropriate. There are cited in the briefs of the respective parties authorities pro and con on this subject. A decision upon this contention, however, is neither necessary nor proper at this time and this is so because the receiver never acted, or assumed to act, as such or qualified, and upon application to this court by counsel for plaintiff in error the order for the receivership was set aside. Plaintiff in error, therefore, has suffered no injury as the result of the appointment of a receiver and his appointment has already been terminated and he never assumed to act as such.

As to the discussion by plaintiff in error in which it contends that the carriage rate fixed by the county commissioners and the increase of that rate by the trial court would be, if enforced, confiscatory, it is sufficient to say that the evidence with respect to such rates, and as to all other matters in controversy between the parties, is more or less conflicting, and the findings of the court thereon cannot be interfered with by this reviewing court. The trial judge was much better qualified than this court is to pass upon the sufficiency of the evidence upon this issue of fact.

At the conclusion of the brief of counsel for the plaintiff in error they say: "With the elimination of the litigation for which Judge Johnson appointed the receiver, all collateral issues are out of the case and there remains for consideration and decision the real issues in the case, namely, those relating to a reasonable rate and to the determination of what is the proper body to determine

such rates.'' We quite agree with the observation contained in the foregoing quotation. We have held, and we think rightly so, that as to the question concerning the rate for the carriage of water, the county commissioners possessed the power to determine and fix such compensation.

Considering the entire record in this case, to which we have devoted much time and investigation, and after studying the exhaustive briefs of both parties, we have reached the conclusion that the judgment of the district court was right and it is therefore affirmed.

Mr. Justice Hilliard not participating.