No. 19,942.

FARMERS WATER DEVELOPMENT COMPANY *v.* CLAUDE BARRETT, ET AL.

(376 P. [2d] 693)

Decided December 3, 1962.

Messrs. BRYANT, PETRIE, WALDECK & KING, for plaintiff in error.

Mr. JOHN A. HUGHES, for defendants in error Claude Barrett, Gordon Barrett, Charles Heldman, William Bray, Dan H. Hughes, Jr., Marvin Heldman, Willard Rogers, Kenneth Spellman, Boyd Buss, Frank Buss, Miles Naff.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS is an action to determine whether the Board of County Commissioners of San Miguel County may set charges for water carriage for plaintiff in error under the facts disclosed in this record. We shall refer to the plaintiff in error as plaintiff; to the various defendants in error who are individual water users as the defendants, and to the Board of County Commissioners and its membership as the Board. We note that the Board and its members are only nominal defendants.

The record discloses that in 1897 The Naturita Ditch Company (whose name was later changed to The Naturita Canal and Reservoir Company) secured its first decree for water and in 1899 commenced construction of a water system to supply various interested farmers with irrigation water. This company, believing it owned the diverted water rights in its system, proceeded to sell them to farmers along its ditches and agreed to carry, store and deliver the water for hire. More water was sold than possessed and a later court action decreed that those persons who had first beneficially used the water were the owners of the water rights as distinct from the ditch and reservoir system. The Naturita Canal and Reservoir Company thereafter became insolvent and its system sold under foreclosure. After various new companies had, without avail, attempted to make it a successful venture, the entire system eventually came into plaintiff's possession. Plaintiff was incorporated in 1913 as a mutual ditch company by some of the water users of the old company. It agreed with its stockholders that it would seek to acquire additional water rights and that it would clean out and enlarge the ditch and reservoir system — which it proceeded to do.

During approximately the same period, i. e., in 1912 and 1913, the then operator of the original system, The San Miguel Irrigation and Land Company, failed to pay certain liens against its property. This resulted in a foreclosure action *with the certificate of purchase for all its interest going to plaintiff*. Certain of those persons who earlier had had water decreed to them, however, refused or failed to become stockholders in plaintiff. It is some of their successors who are the individual water user defendants named in this action.

We note that the stock certificate as well as the contract form in the record for the purchase of some of The Naturita Canal and Reservoir Company both provided that the company would keep and maintain its canal and its reservoirs in good order and condition with the

right to assess the stockholders pro rata for the expenses of maintaining, repairing and superintending the system.

In 1916 the tangled affairs of the entire operation resulted in a lawsuit (No. 1991 in the District Court of Montrose County). The pertinent parts of the final decree rendered therein are twofold:

1. The trial court decreed that: "* * * the ownership of and title to the enlargement of said ditch and reservoir system of Defendant Company's (San Miguel's) original system, be, and the same is declared to be, and the same is, hereby decreed to be, in said The Farmers Water Development Company, as a separate and distinct entity from the original system of defendant company."

2. The trial court also recognized there would be difficulties in trying to operate a ditch and reservoir system where certain users of the system were not stockholders in the operating company, so its decree further provided: "That the conditions surrounding this property and in the particular locality in view of its previous history, make it necessary for the successful maintenance and operation of the project, that it be managed, controlled and operated by one organization, *and that The Farmers' Water Development Company have acquired title to said property, subject to the easements and contract rights of the water users* of said Eighty (80) cubic feet per second of time priorities (i. e. the water of these defendants and those similarly situated), and also subject to the easements and rights of the First and Second decreed priorities in the reservoir of said irrigation system.

"It is therefore ordered, adjudged and decreed that the said The Farmers' Water Development Company and its successors shall manage, control and operate the said system and distribute the waters thereof to the owners of the aforesaid priorities of said Eighty (80) cubic feet of water per second of time, *upon such assessments as are provided for in the contracts of the respective owners of said priorities, which said assessments*

*shall not in any event exceed the pro-rata part of the necessary expense of maintenance and operation of the part of said system used by said Eighty (80) foot owners."* (Emphasis supplied.)

We note that nowhere in this decree are defendants or their predecessors in interest referred to as "co-owners" of anything with plaintiff, the decree recognizing plaintiff's title to the system under its certificate of purchase.

Plaintiff thereafter proceeded to operate and maintain the water system; however, a dispute soon arose as to how much it could charge the owners of the separate water rights for carriage and delivery of their water. In 1925 the district court (in civil action No. 2970) entered its decree on this matter based on a stipulation of the parties. It permanently restrained plaintiff from charging in excess of $20.00 per second foot of water.

In 1959 plaintiff sought relief from the $20.00 limit by petitioning the County Commissioners for an increase to $100.00, which it asserted to be its actual present cost per second foot. Defendants' action to prohibit the County Commissioners from so acting followed and the district court ruled in their favor. The principal ground for its decision was that these parties are co-owners of the system, and that the statutory and constitutional provisions relied on by plaintiff's placing rate making authority in the Board do not apply in such a situation. The Court cited and relied upon *Wanamaker v. Pettit,* 89 Colo. 344, 3 P. (2d) 295 (1931) as its authority.

Defendants themselves urged several grounds in the trial court and enlarged on them on writ of error to sustain the action below. They may be summarized as:

1. Plaintiff is a mutual ditch company and so not under the Board's jurisdiction;

2. Defendants have an equitable ownership in the plaintiff's system—thus are co-owners;

3. The 1925 court decree resulted in an inviolate con-

tract freezing the rate to be charged at not over $20.00 per second foot; and,

4. On writ of error only, estoppel is asserted.

It thus appears that the first matter to be decided is whether these parties are in fact "co-owners" of the system or whether their relationship is of a different kind.

Let us review briefly the foregoing facts:

First we have the defendants who were decreed priorities of water use and who have a later decree (the 1916 one) which provided that the defendants have "easements and contract rights" in the ditch and reservoir system. The "easements" are of course for water carriage and the "contract rights" can only have reference to the contracts of purchase and the stock certificates of the old defunct The Naturita Canal and Reservoir Company. Both of the latter required a pro rata sharing of expenses.

Next we have plaintiff, which is a mutual ditch company, with complete title to its new water rights plus those surrendered to it by its stockholders, which latter rights sprang from the defunct The Naturita Canal and Reservoir Company. Plaintiff also owns outright all its enlargements to the entire system; and, by its certificate of purchase of the rights of The San Miguel Irrigation and Land Company it also owns outright, subject only to defendants' easements and contract rights for water delivery, the entire original system.

Then we have the 1916 decree which allowed plaintiff to charge defendants pro rata assessments for actual costs of operation per "the contracts of the respective owners of said priorities." Naturally, only a pro rata cost was allowed and no fair return on investment authorized as to these owners in favor of plaintiff, because as to them plaintiff was the owner of a servient estate in the system.

 The cause of the controversy thus is pinpointed in the decree entered in 1925 wherein plaintiff was permanently restrained from charging defendants in excess

of $20.00 per second foot for carriage and delivery of their water. The question thus arises: Did the trial court have jurisdiction to enter such an order? We think not. We are further persuaded that the learned trial court erred in the instant action in enjoining the relief sought, for the following reasons:

1. Article XVI, Section 8, of The Colorado Constitution states:

"The general assembly shall provide by law that the board of county commissioners in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations."

2. Pursuant to the above constitutional provision the General Assembly has provided statutory procedures whereby those furnishing water carriage can have the county commissioners establish reasonable maximum rates. These original statutes now appear as C.R.S. '53, 147-8-2, et seq.

3. There is no showing here as there was in *Wanamaker Ditch Company v. Pettit,* supra, that defendants are tenants in common with plaintiff in the ownership of the ditches or reservoirs, or that estoppel operates against plaintiff as it did in that case, so as to make C.R.S. '53, 147-8-2, et seq. inapplicable. Also, see *Johnston v. Wanamaker Ditch Company,* 95 Colo. 551, 38 P. (2d) 907 (1934), where it was held that where a party is entitled to run water through a ditch as a co-owner, in the absence of a contract concerning compensation to the ditch company therefor, he must pay his pro rata share of the upkeep of the ditch and evidence of the amount fixed by the county commissioners as to such share is prima facie proof thereof. Defendants are not stockholders of plaintiff, and have no ownership rights to bar the requested relief.

4. The very contracts and stock certificates, under which defendants claim and are entitled to water car-

riage and delivery, require them to pay pro rata for such services.

■ 5. The 1925 decree which purported to set a permanent rate of $20.00 per second foot was a nullity. As pointed out above, the power to set such rates is vested by the constitution exclusively in the Board. The only time the courts can interfere is after the Board either acts or fails to act, and then only to determine whether what was done or not done was unreasonable, arbitrary or an abuse of discretion. Nor can this rate making power be delegated to others. For as was said in *Northern Colorado Irrigation Co. v. Commissioners,* 95 Colo. 555, 38 P. (2d) 889 (1934):

"It is true that such a contract was made in this case, but it does not necesarily follow that the same is binding upon either party. If, as we have just shown to be true, the county commisioners have been invested with this power by our Constitution, and have exercised it, to establish the annual maximum rate for the carriage and delivery of water to the consumer, it would seem to follow that the carrier is not vested with power to prescribe the rate which it shall receive for its services. This contract, therefore, between the carrier and the consumer, whereby the carrier attempts to fix and collect the rate for carrying and delivering water to the consumer, is not binding on the latter because the Colorado Constitution and statutes upon the subject have conferred upon, and vested in, the county commissioners of the respective counties the exclusive power to fix the rate for such service. Neither the carrier nor the landowner owns the water diverted from the natural stream. They have only the use thereof under regulations prescribed by the state. Ownership of the water of natural streams still remains with the state. Its use by the carrier and landowner under the ditch is by permission of the state. It necessarily follows that this contract between the carrier and water consumers is not binding upon either because the Constitution and statutes of

Colorado have lodged the rate-making power elsewhere. * * *

"* * * we say that although the plaintiff Northern Colorado Irrigation Company had a contract with its water consumers by which they were required to pay a designated price for the carriage and delivery of water at their respective headgates, nevertheless, the Constitution of the state of Colorado in section 8 of article XVI expressly commands the general assembly to" do this. "* * * This constitutional power to prescribe such a rate has been recognized by our general assembly repeatedly. It is not a divisible power and the general assembly could not, if it would, divest itself thereof and confer it upon the carrier and thus nullify the constitutional provision above cited which expressly gives such power to the respective county commisioners."

■ 6. Mutual water companies have been defined as private corporations organized for the express purpose of furnishing water only to the shareholders thereof and not for profit or for hire. See: *3 Kinney on Irrigation and Water Rights*, Second Edition, Sec. 1480, at page 2659. However, Kinney also says (at p. 2661):

"Of course, one cannot be compelled to go into one of these corporations, and merge his vested rights, either to the water, or to the diverting and conveying works, unless he sees fit. Therefore, many of these corporations only include the rights of a part of the co-owners of the same ditch or the common source of supply * * *."

It thus appears that defendants do not have to be either stockholders of plaintiff or co-owners of the system to have their water transported and delivered through plaintiff's system. On the other hand there is no legal or equitable reason to compel plaintiff to render defendants such service at a loss even if the 1916 decree, which is now res judicata, found that the services must be rendered at cost, i.e., pro rata.

■ 7. We conclude that no stipulation of the parties, either in or out of court and no decree of the trial court

such as that entered in 1925, can have any validity in the instant case as far as the rates to be charged by plaintiff to users who are neither stockholders nor co-owners.

These defendants are and have always been subject to the obligation of paying their fair and reasonable pro rata share of the necessary costs incurred in delivering their water.

The authority to set applicable rates for water carriage and delivery is in the Board in the circumstances shown, hence the trial court must vacate its injunctive order so that the County Commissioners may proceed to hear evidence to determine the proper pro rata share of costs to be borne by these defendants.

The judgment is reversed and remanded with directions to proceed according to the views herein expressed.

MR. JUSTICE HALL and MR. JUSTICE PRINGLE concur.