498 P.2d 1169 (1972)
Emanuel E. ZOLLER et al., Plaintiffs-Appellees,
v.
The MAIL CREEK DITCH COMPANY, a Mutual Ditch Corporation, Defendant-Appellant.
No. 70-175.
Colorado Court of Appeals, Div. II.
June 20, 1972.
*1170 Hill & Hill, Alden T. Hill, Alden V. Hill, Richard B. Manges, Fort Collins, for plaintiffs-appellees.
Fischer & Beatty, Ward H. Fischer, Albert P. Fischer, Fort Collins, for defendant-appellant.
Selected for Official Publication.
SILVERSTEIN, Chief Judge.
Plaintiffs, Mr. and Mrs. Zoller and Mr. Nelson, are stockholders in the defendant, The Mail Creek Ditch Company, a mutual ditch corporation. They brought this action to obtain a mandatory injunction to compel the company to carry and deliver, through the company ditch, water represented by shares of stock in another mutual ditch company. The defendant appeals from the judgment of the trial court granting the injunction. We affirm.
The facts giving rise to this action, as delineated in the findings of fact of the trial court, are fully supported by the record and, as pertinent to this appeal, are:
"The Defendant is a mutual ditch company originally organized in May, 1879, as `Mail Creek Ditch' Irrigating Company, for the purpose of `constructing and maintaining an irrigating ditch for the purpose of irrigating lands in Larimer County, Colorado.' The corporate existence was extended and renewed in 1900. In 1920 a new certificate of incorporation was filed under the name of `The Mail Creek Ditch Company.' Its purposes were to take over all property of the original company and to operate and control for mutual use and benefit of members of the corporation that certain line ditch as now constructed, owned, used and controlled by the original company for distribution of water from its ditch among its stockholders. The articles expressly state and the evidence is undisputed that the ditch is primarily a lateral ditch about two and a half miles in length, taking its supply of water from the New Mercer ditch, the Larimer County Canal No. 2, and waste and seepage water;
"The Defendant as such owns very little water. The source of the water owned by the Defendant is from seepage and waste waters, the Larimer County Canal No. 2 and the New Mercer ditch. The water the Defendant does own is distributed pro rata among its stockholders. The principal quantity of water carried by the Defendant's ditch is owned by its shareholders as individuals and comes from the New Mercer ditch, the Larimer County Canal No. 2 ditch and the Northern Colorado Water Conservancy District (Big Thompson water). The Defendant's ditch has carried in the past some Mountain and Plains Company water for its stockholders;
"The Defendant annually levies an assessment on the shares of stock in the ditch which assessment provides the funds for repair and maintenance of the ditch;
"Since water from the Northern Colorado Conservancy District became available, the Defendant has carried for its stockholders their respective water from *1171 this district without charge for some years and with a charge of so much per acre foot for other years. The stockholders of Defendant individually own different quantities of water from the Northern Colorado Conservancy District;
"34.7 shares of the authorized capital stock of 40 shares in the Defendant company is now issued and outstanding;
"In the carrying of water from the New Mercer ditch for stockholders of the Defendant's ditch, the Defendant has for many years had and followed a policy or rule which requires the ownership of one share of the Defendant's stock for the carrying of water represented by two shares of stock in the New Mercer Ditch company. There appears to be no written bylaw or record of this long established policy, but it is undisputed that such policy exists, has been known to the Defendant stockholders, recognized, followed, and acquiesced in by them. There is no question of its existence;
"The Plaintiffs, in 1969, having each respectively acquired additional stock in the New Mercer ditch company, attempted to acquire sufficient additional stock in the Defendant's Company to enable the Plaintiffs to comply with the policy in order to carry the newly acquired New Mercer water through the Defendant's ditch. For reasons not deemed material in this decision, the Plaintiffs were unable to acquire the additional stock in the Defendant company and then requested that the Defendant carry the additional New Mercer water regardless of the policy and offered to pay reasonable carrying charges. The request was denied and refused by the Defendant company;
"The undisputed testimony is that the capacity of the Defendant's ditch is such that it can carry all the water which in keeping with good and recognized practices of irrigation, could be put to use upon the lands of its shareholders served by the ditch."
The trial court then concluded that the policy requiring one share of defendant's stock for each two shares of Mercer stock was fair and reasonable to the extent that it provided a rule and guide for distribution of the annual assessments among its shareholders; that the policy became arbitrary, unreasonable and illegal when applied, as it was here, to refuse to carry plaintiffs' extra Mercer ditch water under the existing circumstances; that the refusal to carry plaintiffs' water ignored the very purpose and service for which defendant company was organized; that in fairness to all stockholders, a reasonable charge should be made for carrying the excess water; and that defendant was not a "carrier ditch", and, therefore, not subject to the statutory provisions regarding the fixing of rates by the county commissioners.
The various arguments raised by defendant company on appeal all pertain to two basic issues, namely; that the company cannot be compelled to carry for hire, and that the court usurped the power of the county commissioners to establish rates for ditch companies.
In the instant case the ditch company owned very little water. Its main function was to deliver to its shareholders water owned or leased by its shareholders individually. This water came from the New Mercer ditch, the Larimer County Canal No. 2, and from the Northern Colorado Water Conservancy District. This latter water was carried by the ditch company without any reference to the policy here in question.
That policy was not formulated to restrict the amount of water to be carried, but to provide a guideline for pro-rating the assessments for the cost of operation of the ditch among its shareholders. It did not inhibit the carrying of additional water for the shareholders.
As found by the trial court, the action of the ditch company in applying the two-for-one policy to prevent plaintiffs from carrying all of their water, within the capacity *1172 of the ditch, was arbitrary and capricious. This is particularly evident in light of the fact that the plaintiffs were not permitted to acquire the necessary stock to qualify under the policy when there were 5.3 authorized shares of stock unissued and plaintiffs Zollers needed.6133 of a share, and plaintiff Nelson needed.4656 of a share, to meet the policy ratio.
The decree does not compel the defendant company to act outside of the purpose for which it was organized, which was to carry the water of its stockholders to irrigate their lands lying under its ditch. As was stated in Sherwood Irrigation Co. v. Vandewark, 138 Colo. 261, 331 P.2d 810, "The relationship of the parties here is such that the plaintiffs are entitled to demand and the defendant is under an obligation to supply the services for which it was organized and exists upon a fair and reasonable basis."
A "fair and reasonable basis" means that the cost of maintaining the ditch of a mutual ditch company must be borne by each of its stockholders in proportion to the benefit each receives from the ditch. To maintain this proportion the trial court provided that the defendant company should assess, and that plaintiffs should pay, a reasonable charge for the carrying of this extra water.
The effect of the decree is to require the defendant company to fulfill its duty to plaintiffs to carry water belonging to plaintiffs, and at the same time to permit the company to fulfill its duty to the other stockholders, to maintain the proper balance between benefits received by, and the costs assessed against, each stockholder.
Further, the court did not usurp the power of the county commissioners as set forth in C.R.S.1963, 148-8-2 and in the Colorado Constitution. The assessment or charge provided for in the decree is not a rate "to be charged for the use of water" as provided for in Colo.Const. Art. XVI, Sec. 8. Mutual ditch companies do not charge for "use of water."
"Mutual ditches are distinguished by the fact that the consumers are the sole owners of the ditch and diversion works. They share the costs of operation without profit while the carrier ditch is entitled to a reasonable return on investment over and above costs." City & County of Denver v. Miller, 149 Colo. 96, 368 P.2d 982.
See Farmers Water Development Co. v. Barrett, 151 Colo. 140, 376 P.2d 693, and Wanamaker Ditch Co. v. Pettit, 89 Colo. 344, 3 P.2d 295.
The judgment is affirmed.
DWYER and ENOCH, JJ., concur.