594 P.2d 586 (1979)
Keith MATTHEWS, Barbara Matthews, and Carl B. Runyon, Plaintiffs-Appellants,
v.
TRI-COUNTY WATER CONSERVANCY DISTRICT, Defendant-Appellee.
No. 78-001.
Colorado Court of Appeals, Div. II.
January 11, 1979.
Rehearing Denied February 8, 1979.
Certiorari Granted May 7, 1979.
*587 Overholser & Slee, John W. Overholser, Montrose, for plaintiffs-appellants.
Brooks, Miller, Brooks & White, Theodore L. Brooks, Montrose, for defendant-appellee.
STERNBERG, Judge.
The plaintiffs, who are subdividers, and owners of certain water taps, appeal the denial of their claim against defendant, Tri-County Water Conservancy District, for injunctive relief to prevent Tri-County from enforcing as to plaintiffs a rate schedule and tap fee policy adopted after plaintiffs had purchased their water taps. We affirm.
Tri-County was organized pursuant to the Water Conservancy Act, now § 37-45-101 et seq., C.R.S.1973. According to Tri-County's regulations all subdividers are to install *588 water systems in their subdivisions at their cost but to Tri-County's specifications. Upon completion, such systems are to be transferred to Tri-County for full maintenance and operation, and Tri-County then sells taps to the owners of each lot within the subdivision.
Plaintiffs own two subdivisions in Montrose County within the boundaries of Tri-County. In 1975, the water system plaintiffs had built to service their first subdivision was rejected by Tri-County because it did not meet the specifications as to joint compound, leaks, and proximity to sewer and underground power lines. As a solution to the problem of providing water to occupied houses in the subdivision, Tri-County sold plaintiffs a two-inch commercial tap and meter. From this commercial tap, plaintiffs installed a pipeline system within the subdivision with meters for each residence.
Tri-County billed plaintiffs at a bulk rate for the water going into the commercial tap. Plaintiffs then billed the residence owners for the amount of water each used. Plaintiffs' plan was to extend the system to include a second subdivision in 1976.
Plaintiffs had also purchased 11 individual "inactive" taps in 1973. Tri-County's policy was to assess a minimum charge for inactive taps, but it had not actually done so until July 1976, when Tri-County notified plaintiffs it was going to start collecting the fee.
In August of 1976, an executive committee, appointed by Tri-County's Board of Directors, adopted a new rate and tap schedule which was to be effective that month. It provided that commercial taps supplying individual residences would no longer be billed at the commercial bulk rate, but rather the billing would be based on a rate for each residence connected to the commercial tap. It also provided there would be a $500 tap fee for each new residence added to the commercial tap within a subdivision. The Board of Directors approved the executive committee's proposal on October 5, 1976.
Plaintiffs' position is that Tri-County's new rate schedule and tap fee policies are not enforceable as to them; that they are entitled to retain their inactive taps without monthly charges; that the commercial bulk rate should continue for their first subdivision; and that they should be allowed to expand their present commercial tap to the second subdivision and serve individual lots without paying additional new tap fees.

I. THE INACTIVE TAP CHARGE
Plaintiffs' arguments protesting the inactive tap charge are without merit. Minutes of the Board of Directors' meeting reveal that while the Board agreed to commence enforcing the charge in July 1976, the charge was listed in the petitions for the inactive taps which plaintiffs had signed in 1973. That they went for three years without being billed for a charge which they initially agreed to pay does not give plaintiffs a legal basis to contest the charge once the Board commenced collection efforts to enforce it. In effect, plaintiffs had three free years and cannot now be heard to complain.

II. THE CHANGE IN TAP CHARGES AND WATER RATES
To support their position regarding discontinuance of the commercial bulk water rate and the requirement that they buy individual taps, plaintiffs put forth several arguments.
A. Public Utilities Commission Jurisdiction
They contend first that Tri-County is a public utility within the meaning of § 40-1-103, C.R.S.1973, and therefore, is precluded from setting any rates and regulations until it receives a Certificate of Public Convenience and Necessity from the Public Utilities Commission and applies for such rates and regulations in accordance with PUC procedures.
*589 We hold that water conservancy districts such as Tri-County, are not under PUC jurisdiction. The Water Conservancy Act, now § 37-45-101 et seq., C.R.S.1973, was enacted in 1937, almost 25 years after the PUC was created. The repeal-saving clause of the Water Conservancy Act, § 37-45-107, C.R.S.1973, specifically suspends the operation of all other statutes which interfere "with the accomplishment of the purposes of this article according to its terms. . . ."
The Water Conservancy Act provides a complete statutory scheme for the creation of water conservancy districts and their operation, including the grant of authority to set rates to the Board of Directors. It requires no further procedures, such as seeking PUC approval of these rates, but merely states that such rates "shall be equitable although not necessarily equal or uniform, for like classes of service throughout the district." Section 37-45-118(1)(g), C.R. S.1973.
If the General Assembly had intended that water conservancy districts be subject to the PUC when setting rates, it would have so stated in the Water Conservancy Act, rather than having granted that power solely to the Board. As the Supreme Court stated when discussing that Act:
"It is not amendatory of any existing statute and its provisions are not directly dependent upon other Colorado laws." People ex rel. Rogers v. Letford, 102 Colo. 284, 79 P.2d 274 (1938).
Merely because plaintiffs can fit the water conservancy district within the broad definition of a public utility, it does not automatically follow that it is subject to PUC jurisdiction, and in view of the history and purpose of the Water Conservancy Act, such a conclusion would be incongruous.

B. The County Commissioners' Jurisdiction

In the alternative, plaintiffs argue that if the PUC does not have jurisdiction over Tri-County then the Boards of County Commissioners of Ouray, Montrose, and Delta Counties do, based on Colo.Const., Art. XVI, Sec. 8, and § 37-85-103, C.R.S. 1973, which invest the County Commissioners with powers to set rates for water. Again we disagree.
The cited section of the Constitution is entitled "Mining and Irrigation" and the cases dealing with it all relate to irrigation. See, e. g., Farmers Water Development Co. v. Barrett, 151 Colo. 140, 376 P.2d 693 (1962). Here, irrigation water is not at issue. Rather this case is governed by § 37-45-118(1)(g), C.R.S.1973, which grants the Board of Directors power to fix rates for water other than irrigation. Section 37-45-118(1)(f), C.R.S.1973, on the other hand, which deals with irrigation, does not give the Board of Directors power to set rates for irrigation water. From this we conclude that the General Assembly was aware of Colo.Const., Art. XVI, Sec. 8, and gave the Boards of Directors of water conservancy districts power to set rates for domestic use, as distinguished from irrigation use.
Although not ruling on this issue in People v. Letford, supra, the Supreme Court stated:
"There seems to be nothing in the Constitution which would prohibit the Legislature from conferring upon the district, in the first instance, the right to determine the charge to be made for the sale or leasing of water."
Consequently, we hold that the Board of Directors of the water conservancy district is not subject to County Commissioners' authority when setting rates for water it sells to these plaintiffs.

III. OTHER CONTENTIONS
The plaintiffs, without directly attacking the enabling legislation, raise certain constitutional arguments attacking the validity of the rates and fees based upon denial of substantive and procedural due *590 process and equal protection. These contentions are without merit. The petition signed by plaintiffs when they purchased their commercial tap states that the petition is subject to all relevant provisions of the Water Conservancy Act "and the rules and regulations of the district, as the same, from time to time, may be adopted or amended." Plaintiffs have no constitutional right, nor even a contractual right, never to have their water rates raised, nor an individual tap fee changed. In fact, enforcing the new rate and tap fees on plaintiffs merely brings them in line with charges being paid by other similar customers.
Both parties have argued as though the trial court had held the new schedule would be effective as of the date of the executive committee's approval. Such a holding would be improper: The Board, not the executive committee, sets rates. Section 37-45-134, C.R.S.1973. However, the judgment of the trial court states: "The policies, rates and connection fees . . . when approved by the Board became valid. . . ." Thus, there is no error in this regard.
Plaintiffs' contention that the Administrative Procedure Act applies, not having been raised in the motion for a new trial, will not be heard on appeal. C.R.C.P. 59(f).
The judgment it is affirmed.
ENOCH and KELLY, JJ., concur.