Clovis R. NELSON and Lyal M. Nelson, Plaintiffs-Appellants,

v.

The LAKE CANAL COMPANY OF COLORADO, Henry Brunner, as its President and Director, Charles Willis, as its Superintendent and Director, Larry (Lawrence) Rudolph, as a Director, Robert Ochsner, as a Director, Larry Hoffmer, as a Director, John D. Hartman, as its Secretary, and Dave Becker, as its Ditch Rider, Defendants-Appellees.

No. 79CA0939.

Colorado Court of Appeals, Div. II.

Dec. 3, 1981.

Rehearing Denied Dec. 31, 1981.

Certiorari Denied March 22, 1982.

Hill & Hill, P. C., Alden T. Hill, Fort Collins, for plaintiffs-appellants.

Fischer, Brown, Huddleson & Gunn, Charles R. Huddleson, Fort Collins, for defendants-appellees.

KELLY, Judge.

Plaintiffs, Clovis and Lyal Nelson, sought a mandatory injunction to compel defendants, Lake Canal Company and its officers, to provide irrigation water in excess of the company's regulation limiting water deliveries to four days per week. The trial court granted the injunction, but ordered plaintiffs to pay the company for the cost of providing water on the fifth day. Plaintiffs appeal the trial court's denial of their claims for damages and costs. Plaintiffs also argue that the Lake Canal Company is a carrier ditch, without authority to set the fee for providing the extra water, and not a mutual ditch company, as found by the trial court. We affirm in part, reverse in part, and remand for determination of damages.

The trial court found that the Lake Canal Company (LCC) was formed in 1872 for the purpose of furnishing water to its shareholders, and not for the purpose of making a profit. Its irrigation ditches carry water from the Cache La Poudre River, from the Big Thompson, and from various reservoirs. The water rights are owned by the individual shareholders of LCC, and not by the company itself.

During the dry 1977 irrigation season, the directors of LCC reinstituted a 1958 regulation limiting the supply of water to four days per week instead of five. Additional runs on the fifth day would be made only if a shareholder ordered a minimum of 20 cubic feet per second. The directors later decided to continue this policy into 1978, and a majority of the shareholders ratified the decision. Plaintiffs, who are shareholders of LCC, objected to the policy because they needed water on the fifth day but their irrigation equipment handles only eight cubic feet per second. Plaintiffs sought an injunction prohibiting LCC from enforcing its 20 c.f.s. rule and claimed crop damage resulting from LCC's failure to provide the requested water.

The trial court held that LCC is a mutual ditch company, obligated to furnish water to its shareholders because they own the water rights. The trial court further held that LCC may make reasonable regulations such as the 20 c.f.s. rule, but that "the interest of the individual shareholders cannot be defeated or altered by any action of the ditch company or its other shareholders." LCC has the "right to make a direct assessment against one or more of its particular shareholders for providing services and delivering water in excess of that of the general delivery policy to all shareholders. . . . [I]f the plaintiff requests delivery beyond the 'four day—minimum flow' policy the defendant mutual ditch company must provide the water, and it may also assess plaintiffs for the cost of making said delivery whether such means hiring an extra ditch rider or making extra or special payments to the regular ditch rider."

Defendants did not appeal the trial court's grant of a mandatory injunction, but plaintiffs appeal the trial court's designation of LCC as a mutual ditch company. Plaintiffs claim that LCC is a carrier ditch company, the rates of which are set by the board of county commissioners, and not a mutual ditch company, with the right to set its own rates.

### Mutual v. Carrier Ditch

A mutual ditch company is one not organized for profit or hire, but existing primarily for the benefit of the shareholders. It is engaged in the business of storing and transporting water to its shareholders, who own the right to use the water. Delivery of the water is conditioned on payment of an annual assessment levied to meet operating expenses of the company. *Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975). *See* W. Fischer, *Water Title Examination,* 9 *Colo. Lawyer* 2043 at 2051 (1980). A carrier ditch owns the legal

title to a decreed appropriation of water from a natural stream. *City & County of Denver v. Miller*, 149 Colo. 96, 368 P.2d 982 (1962). Carrier ditches carry water for sale to consumers who have contracted with the company. Charges for water delivered by carrier ditches are fixed by the board of county commissioners. Fischer, *Water Title Examination, supra*, at 2053. *See* § 7–42–107, C.R.S.1973. Mutual ditches are distinguished from carrier ditches in that the shareholders of mutual ditch companies are the sole owners of the ditch and diversion works. They share the costs of operation without profit, while the carrier ditch is entitled to a reasonable return on its investment over and above costs. *Miller, supra.*

There was ample evidence in the record to justify the trial court's conclusion that LCC was a mutual ditch company. Its shareholders are the owners of the decreed appropriations of water, and they pay an annual assessment to cover the operating expenses of the company. Plaintiffs argue that in 1872, when LCC was organized, there was no statutory provision for mutual ditch companies. However, the practice and policy adopted by a ditch company in its operation, and not the language contained in its articles of incorporation, are determinative of its character. *Billings Ditch Co. v. Industrial Commission*, 127 Colo. 69, 253 P.2d 1058 (1953). Since LCC is currently operated as a mutual ditch company, the trial court was correct in its designation.

Plaintiffs seek to designate LCC as a carrier ditch so that the board of county commissioners and not LCC would set the assessment for the additional water provided to plaintiffs on the fifth day. However, the trial court's conclusion that LCC is a mutual ditch company is the basis of its determination that LCC is obligated to provide water to plaintiffs on the fifth day. Plaintiffs' ownership of the water is the source of their right, and if LCC were a carrier ditch, they would have no such right.

LCC's status as a mutual ditch company is also the source of its right to charge a direct assessment against plaintiffs for providing the extra service. The cost of maintaining a ditch must be borne by each of its shareholders in proportion to the benefit each receives from the ditch. *Zoller v. Mail Creek Ditch Co.*, 31 Colo.App. 99, 498 P.2d 1169 (1972). In *Zoller*, we approved a trial court's order that plaintiff must pay a reasonable fee to the ditch for carrying extra water. As there stated:

> The effect of the [trial court's] decree is to require the defendant company to fulfill its duty to plaintiffs to carry water belonging to plaintiffs, and at the same time to permit the company to fulfill its duty to the other stockholders, to maintain the proper balance between benefits received by, and the costs assessed against, each stockholder."

The trial court here properly balanced the interests of LCC's other shareholders with the interests of the Nelsons.

*Damages*

A mutual ditch company "is not only obligated to furnish a proper proportion of water to each of its shareholders, but it is liable in damages for failure to do so." *Jacobucci, supra.* The trial court held that plaintiffs failed to prove that they incurred damages solely as the result of LCC's four-day water delivery regulation. The trial court reasoned that, since the plaintiffs had adjusted to the four-day rule in 1977, and had received advance notice of the continuation of the rule in 1978, they could have used farm practices instituted in 1977 "to prevent or mitigate their damages, but failed to do so." The trial court stated that plaintiffs could have pursued other remedies to prevent damage to their crops, and that they failed to prove the amount of damage. Plaintiffs argue that they need not prove that their damages resulted solely from LCC's actions, that LCC admitted the crop damage, that LCC did not plead plaintiffs' failure to mitigate as an affirmative defense, and that the amount of damages does not require proof to a mathematical certainty.

Since the relationship between the mutual ditch company and its shareholders arises out of contract, *Jacobucci, supra,* contract principles of causation should be applied to determine LCC's responsibility for the crop damage suffered by the Nelsons. "In order to establish liability the plaintiff must show that the defendant's breach was 'a substantial factor' in causing the injury." 5 *A. Corbin, Contracts* § 999 (1964). The trial court erred in requiring plaintiffs to prove that they incurred damages solely as the result of LCC's four-day limitation.

During closing argument, counsel for LCC said: "I don't deny that the Nelsons have had damage." Although admissions of counsel during trial are binding upon a party, *Skeens v. Kroh*, 30 Colo.App. 88, 489 P.2d 347 (1971), LCC's counsel was admitting the fact of damage to the Nelsons' crop, and not LCC's causation of the damage. The extent to which LCC's policy caused the crop damage has yet to be determined.

Plaintiffs had a duty to mitigate their crop damage if they could reasonably do so. *City & County of Denver v. Noble*, 124 Colo. 392, 237 P.2d 637 (1951). Although defendants did not plead plaintiffs' failure to mitigate in their answer as required by C.R.C.P. 8(c), evidence was received at trial on the mitigation issue. When issues not raised by the pleadings are tried, they are treated in all respects as if they had been raised in the pleadings. C.R.C.P. 15(b). The trial court's consideration of evidence of plaintiffs' failure to mitigate was proper.

Where defendant's conduct has rendered difficult the assessment of damages, the defendant cannot escape liability simply because it has become difficult to measure the damage with exactness. *American Industrial Leasing Co. v. Costello*, 160 Colo. 588, 418 P.2d 881 (1966). The rule which precludes the recovery of uncertain and speculative damages applies only to situations where the fact of damages is uncertain, not where the amount is uncertain. *Peterson v. Colorado Potato Flake & Mfg. Co.*, 164 Colo. 304, 435 P.2d 237 (1967).

If the trial court determines that LCC's failure to provide water on the fifth day was a cause of plaintiffs' crop damage, the lack of mathematical certainty in computing such damage will not justify failure to award any damages.

The injunction, which provides for LCC to supply and the Nelsons to pay for water in excess of the LCC regulation, is affirmed. The trial court's denial of an award of damages to plaintiffs is reversed, and the cause is remanded for further consideration of the issue of damages, *see Bloxsom v. San Luis Valley Crop Care, Inc.*, 198 Colo. 113, 596 P.2d 1189 (1979), and costs, *see Greenwald v. Molloy*, 114 Colo. 529, 166 P.2d 983 (1946).

VAN CISE and TURSI, JJ., concur.